

NUMBER 13-07-00451-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**OLD REPUBLIC INSURANCE COMPANY,** Appellant,

**v.**

**EDWARD WEEKS,** Appellee.

### On appeal from the 253rd District Court
### of Liberty County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellant Old Republic Insurance Company appeals the district court's judgment entered in favor of appellee Edward Weeks finding that Weeks suffered a compensable workplace injury and resulting disability and that he was entitled to accrued interest and costs. Weeks had obtained an adverse decision from a Texas Workers' Compensation Commission (TWCC) hearing officer; the TWCC appeals panel had subsequently

dismissed Weeks's appeal as untimely. Weeks sought judicial review of the appeals panel's decision in district court. Old Republic appeals from the district court's judgment arguing that the district court lacked jurisdiction over Weeks's appeal and contesting the district court's judgment on the merits of Weeks's claims. We affirm.

## I. BACKGROUND

At the time of trial, Weeks was employed by Roadway Express (Roadway) as a line-haul driver. In 2004, Weeks and his driving partner Pete Millner were based out of Roadway's Houston terminal and drove a regular route to and from Valdosta, Georgia. Millner and Weeks drove ten-hour shifts; when one man was driving, the other would sleep. On September 14, 2004, Weeks and Millner were on their return trip back to Houston when Millner called to Weeks from the front of the cab, informing Weeks that it was his turn to drive. When Weeks jumped out of the bunk in the sleeper berth, he felt a severe pain in the right side of his back radiating into his right leg.

After his workers' compensation claim was denied by Old Republic, Roadway's workers' compensation insurance carrier, Weeks filed a claim for benefits with the TWCC challenging Old Republic's denial and alleging he had suffered a work-related back injury and, as a result of the injury, was disabled and unable to work. A contested case hearing was held on March 16, 2005. In a decision dated March 24, 2005, the hearing officer determined that Weeks did not sustain a compensable injury, did not sustain a compensable repetitive trauma injury, and did not have a resulting disability. On April 20, 2005, Weeks filed a request for review with the TWCC appeals panel.[1] The

---

[1] It is uncontroverted that Weeks filed his administrative appeal on April 20, 2005. However, the facts related to whether Weeks's administrative appeal was timely are disputed by the parties.

appeals panel denied Weeks's request on the grounds that his appeal was not timely, therefore rendering the hearing officer's decision final and binding.

Weeks sought judicial review of the appeals panel's decision by filing a petition with the 253rd District Court in Liberty County.[2] TEX. LAB. CODE ANN. § 410.251 (Vernon 2006). Weeks urged the court to reverse the appeals panel's decision on the timeliness of his request for review and to render judgment that he had suffered compensable injuries and was disabled. Old Republic filed a plea to the jurisdiction and motion for summary judgment, alleging that the district court lacked subject-matter jurisdiction because Weeks's administrative appeal was untimely and, therefore, the decision of the hearing officer was final. The court denied both the plea and the motion on December 5, 2006. [3]

On February 7, 2007, the district court conducted a bench trial on Weeks's substantive claims.[4] The court heard evidence from both parties, including expert

---

[2] The case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. See TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

[3] The district court did not give reasons for its denial of Old Republic's plea to the jurisdiction and motion for summary judgment. Accordingly, we may affirm or reverse on any basis preserved in the record. Combined Specialty Ins. Co. v. Deese, 266 S.W.3d 653, 657-58 (Tex. App.–Dallas 2008, no pet.).

[4] A trial on a petition for judicial review is limited to the issues decided by the TWCC appeals panel. TEX. LAB. CODE ANN. § 410.302(b) (Vernon 2006). Here, the appeals panel disposed of Weeks's request for review on the jurisdictional timeliness issue without addressing the merits of the request and, therefore, did not rule on Weeks's alleged injuries and disability. The judicial review process that follows the decision of an appeals panel differs greatly from a regular appellate situation, in which a plaintiff or defendant appeals a trial court's ruling to the court of appeals. In a regular appeal, if the appellate court reverses the trial court's jurisdictional ruling, it remands the case to the trial court for determination on the merits. See TEX. R. APP. P. 43.2. However, in this administrative context, no such mechanism exists for the district court to remand Weeks's case to the TWCC appeals panel. See Tex. Workers' Comp. Comm'n v. Harris County, 132 S.W.3d 139, 146 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (holding that, even though the TWCC appeals panel did not address the merits of the request for review, it was inappropriate for the district court to remand the case to the panel for review on the merits because "no mechanism in the Labor Code allows for such a remand"). In this case, without the option for remand and after determining it had jurisdiction, the district court properly conducted a de novo review of whether Weeks's

testimony on the nature and severity of Weeks's injuries. On March 29, 2007, the court issued its final judgment, rendering judgment for Weeks and ordering that Weeks had sustained a compensable injury, a repetitive trauma injury, and suffered a disability because of those injuries. The court awarded Weeks accrued interest and court costs.[5] Old Republic appeals from the district court's final judgment.

## II. ANALYSIS

### A. Subject-Matter Jurisdiction

By its first and second issues, Old Republic challenges the subject-matter jurisdiction of the district court to hear Weeks's claims.

#### 1. Standard of Review

Whether a court has subject-matter jurisdiction is a question of law and subject to de novo review. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff must allege facts affirmatively demonstrating the district court's jurisdiction to hear the case. *Frank v. Liberty Ins. Corp.,* 255 S.W.3d 314, 319 (Tex. App.–Austin 2008, pet. denied). To determine whether the plaintiff has established jurisdiction, the court will consider both the facts alleged by the plaintiff and the

___

injuries and disability were compensable. See Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co., 208 S.W.3d 523, 530 (Tex. App.–Austin 2006, pet. denied) (petitions for judicial review of issues regarding compensability are governed by a de novo review standard).

[5] Upon request by Old Republic, the district court also issued findings of fact and conclusions of law on May 1, 2007. TEX. R. CIV. P. 296; *see* TEX. LAB. CODE ANN. § 410.305 (Vernon 2006) (stating that the Texas Rules of Civil Procedure apply to proceedings for judicial review unless the rule conflicts with a rule in the labor code). The findings of fact include mixed questions of law and fact, generally stating that Weeks proved by a preponderance of the evidence that he suffered compensable injuries and disability within the scope of his employment with Roadway. The conclusions of law found that the court had jurisdiction, Weeks had sustained injuries and disability, and Old Republic was liable to Weeks for medical expenses and temporary income benefits.

4

evidence submitted by the parties relevant to the jurisdictional issue. *Cont'l Cas. Co. v. Rivera*, 124 S.W.3d 705, 711 (Tex. App–Austin 2003, pet. denied). Absent a showing by the defendant that the plaintiff fraudulently alleged facts to confer jurisdiction or the face of the petition plainly demonstrates a lack of jurisdiction, the court must construe the plaintiff's allegations in favor of jurisdiction. *Id*.

   2. Discussion

   In its first issue, Old Republic charges that Weeks did not exhaust his administrative remedies because of his failure to timely appeal the hearing officer's decision to the TWCC appeals panel. According to Old Republic, Weeks's failure to meet the exhaustion pre-requisite deprives the district court of jurisdiction.

   A party's failure to exhaust administrative remedies under Texas's workers' compensation laws deprives the district court of jurisdiction over the party's request for judicial review. TEX. LAB. CODE ANN. § 410.251 (Vernon 2006); *Combined Specialty Ins. Co. v. Deese*, 266 S.W.3d 653, 658 (Tex. App.–Dallas 2008, no pet.). The exhaustion pre-requisite to judicial review is satisfied only after a party's claims have been reviewed in a contested administrative hearing, followed by a timely appeal to a TWCC appeals panel. *Deese*, 266 S.W.3d at 658. The timeliness of a party's appeal to the appeals panel is included in the exhaustion requirement. *Id*.; *see Frank*, 255 S.W.3d at 320.

   To be timely, the appeal from the hearing officer's decision must be filed by the fifteenth day after the date the challenging party receives the decision, exclusive of weekends and holidays. TEX. LAB. CODE ANN. § 410.202(a) (Vernon 2006). TWCC

5

rules provide that the challenging party is deemed to have received the decision of the hearing officer five days after the decision was mailed. 28 TEX. ADMIN. CODE § 102.5(d) (2009). The hearing officer's decision in Weeks's case was dated March 24, 2005. If we were to presume that the decision was actually mailed on March 24, as was argued by Old Republic and concluded by the TWCC appeals panel, Weeks would have been deemed to receive the decision five days later on March 29, 2005. To make a timely appeal under this scenario, Weeks would then have been required to file his request for review by April 19, 2005, fifteen days after his deemed receipt date. It is undisputed by the parties that Weeks filed his appeal on April 20, 2005.

However, Weeks presented evidence to the district court that the decision was mailed on March 25. Weeks attached the following exhibits to his response to Old Republic's plea to the jurisdiction and motion for summary judgment: (1) an envelope he received from the TWCC with a postal date stamp of March 25, 2005; and (2) Weeks's affidavit affirming that he received the hearing officer's decision in the envelope with the March 25 date stamp. Because Old Republic does not allege that Weeks made fraudulent allegations in his petition to confer jurisdiction and we do not find a manifest lack of jurisdiction on the face of Weeks's petition, we must construe Weeks's allegations in his favor. *Rivera*, 124 S.W.3d at 711. As such, we credit Weeks's evidence and conclude that the hearing officer's decision was mailed on March 25, 2005. Accordingly, under TWCC rules, Weeks's deemed receipt date should have been five days later on March 30. Weeks's request for review to the appeals panel was,

6

therefore, timely because it was filed by April 20, 2005, within fifteen days after the revised deemed receipt date of March 30.

Because Weeks's request for review was timely filed, he properly exhausted his administrative remedies before he sought judicial review, and the district court correctly concluded that it had subject-matter jurisdiction over Weeks's claims. *See Deese*, 266 S.W.3d at 268. Therefore, we overrule Old Republic's first issue.

In its second issue, Old Republic takes a second swing at the timeliness issue by characterizing it as an issue of sufficient trial evidence rather than an issue of subject-matter jurisdiction. Old Republic contends that the district court erred in entering judgment for Weeks because Weeks failed to present evidence at trial that he timely filed his appeal and exhausted his administrative remedies. Despite the fact that the district court disposed of the jurisdiction (*i.e.* timeliness) issue by denying Old Republic's plea to the jurisdiction and motion for summary judgment, Old Republic nonetheless claims that Weeks retained the burden of proof and was required to prove the timeliness of his appeal at the bench trial as well. Assuming, without deciding, that Weeks did retain the burden of proof at trial, we are not persuaded by Old Republic's argument because it has not challenged on appeal the evidence appearing in the record that Weeks's request for review was timely filed with the TWCC appeals panel. We overrule Old Republic's second issue.

B. <u>Admission of Testimony by the District Court</u> [6]

By its fifth issue, Old Republic argues that the district court erred in admitting expert testimony from William J. Langeland, D.C.  By its sixth issue, Old Republic challenges the district court's admission of testimony from Weeks and Millner.

1.  Standard of Review

The admission and exclusion of evidence is a matter within "the sound discretion of the trial court."  *State Office of Risk Mgmt. v. Trujillo*, 267 S.W.3d 349, 351 (Tex. App.–Corpus Christi 2008, no pet.).  We review the trial court's decision to admit or exclude testimony for abuse of discretion.  *Id*.  The trial court abuses its discretion if it acted "without reference to any guiding rules or principles."  *Id*. (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995)).

2.  Expert Testimony of Chiropractor Langeland

In its fifth issue, Old Republic complains that the district court erred in admitting the testimony of Dr. Langeland, asserting that he was unqualified to give expert testimony on causation or repetitive trauma injuries.  Old Republic also complains that Dr. Langeland's testimony was speculative and unreliable.

Under Texas Rule of Evidence 702, an expert must be qualified and his testimony must be relevant and based on a reliable foundation.  TEX. R. EVID. 702; *Brandt v. Surber*, 194 S.W.3d 108, 130 (Tex. App.–Corpus Christi 2006, pet. denied).

---

[6]  Because the admissibility of the witness testimony will bear directly on the sufficiency of Weeks's evidence, we will address Old Republic's fifth and sixth issues related to expert and lay witness testimony before its third and fourth issues related to the sufficiency of Weeks's evidence.

8

To prove that the expert is qualified, "the offering party must show that the expert has knowledge, skill, experience, training, or education" related to the particular issue on which the expert will testify. *Abilene Indep. School Dist. v. Marks*, 261 S.W.3d 262, 268-69 (Tex. App.–Eastland 2008, no pet.). To determine whether expert testimony is reliable, the trial court must assess "'the methods, analysis, and principles relied upon in reaching the opinion . . . to ensure that the opinion comports with applicable professional standards outside the courtroom.'" *Brandt*, 194 S.W.3d at 130 (quoting *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 725-26 (Tex.1998)). The trial court's role is not to determine whether the expert's opinion is actually correct. *Id*. Instead, the trial court must evaluate whether "the analysis used to reach [the opinion] is reliable." *Id*. at 130-31 (citation omitted).

In the medical context, expert testimony must be based on "reasonable medical probability," not mere "possibility, speculation, or surmise." *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 692 (Tex. App.–Waco 2008, no pet.). In our evaluation of the underlying data used by the expert, we will consider the following non-exclusive list of factors to ascertain reliability: (1) the extent to which the expert's theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)*.*

We first address Old Republic's charge that Dr. Langeland is unqualified to give testimony in this case. To preserve error for appeal, a party must make a timely, specific objection to the trial court that names the grounds for the objection with sufficient specificity. TEX. R. APP. P. 33.1; *Adams v. State Farm Mut. Auto. Ins. Co.*, 264 S.W.3d 424, 429 (Tex. App.–Dallas 2008, pet. denied) (op. on reh'r) ("An objection to an expert's qualifications must be raised in the trial court in order to preserve error."). Although Old Republic moved to strike Dr. Langeland's testimony at the conclusion of Weeks's case, it only objected on the basis of reliability, not on the basis of Dr. Langeland's qualifications. Because there was no timely objection to the qualification of Weeks's expert, Old Republic did not preserve this complaint.[7] *City of San Antonio v. Pollock*, 52 Tex. Sup. Ct. J. 665, 2009 WL 1165317, at *5 (Tex. May 1, 2009).

Old Republic also challenges the reliability of Dr. Langeland's testimony. Old Republic complains generally that the facts in evidence at trial do not support Dr. Langeland's conclusions. Specifically, Old Republic argues in its brief that Dr. Langeland gave testimony, inconsistent with his written records, that Weeks's injuries were caused by repetitive trauma, not an acute injury on a specific date. We disagree.

---

[7] Even if Old Republic had preserved the qualification issue, our review of the record reveals that Dr. Langeland is qualified and has the necessary knowledge, education, skills, and experience to testify as an expert regarding causation and repetitive trauma injuries. Dr. Langeland is a board-certified chiropractor with over twenty years of experience treating patients with spinal injuries. He estimated he has treated one-hundred to one-hundred fifty patients a week for the last twenty-two years. Dr. Langeland has also been certified by the Texas Department of Insurance as a designated doctor for the Department of Workers' Compensation. In that capacity, he has been trained as a treating doctor for the Department of Insurance and is routinely asked to make determinations on behalf of the TWCC to settle disputes between insurance carriers and injured workers regarding the extent and nature of workplace injuries. As a designated doctor, Dr. Langeland has extensive experience reviewing MRI films and rendering opinions on whether the films show evidence of injury or trauma.

At trial, Dr. Langeland described the thorough physical exam he conducted on Weeks, including orthopedic, neurological, and range of motion testing. The exam process outlined by Dr. Langeland exhibited a deliberative methodology that incorporated standard chiropractic techniques. *See Brandt*, 194 S.W.3d at 130. Dr. Langeland testified that the symptoms manifested by Weeks in response to the testing were consistent with the complaints of back pain Weeks made in his medical history.

In addition to his own physical exam, Dr. Langeland also relied on the objective data in Weeks's other medical reports. The first physician who examined Weeks after his injury ordered an MRI and electromyography (EMG) to help diagnose the cause of Weeks's back pain. At trial, Dr. Langeland used the radiologist's and neurologist's notes in the MRI and EMG reports to support his opinion. *See Larkins*, 258 S.W.3d at 692. In his testimony, Dr. Langeland demonstrated a thorough grasp of the medical issues encompassed in the physicians' notes. He concluded that the reports from the MRI and EMG proved that Weeks had suffered strains and sprains of the muscles in his lower back and a specific disc injury called radiculopathy that would cause pain to travel down Weeks's right leg. Dr. Langeland classified this injury as an acute trauma to Weeks's back that was likely caused by the twisting motion of jumping up from the bunk in a sleeper berth, as was described by Weeks in his medical history. Based on these reports, Dr. Langeland also concluded that, in general, Weeks was suffering from disc injuries too advanced for a typical man of his age. He determined that the injuries were likely caused by the vertical axial loading—a vertical ceiling-to-floor repetitive motion—Weeks experienced in the course of his employment as a truck driver.

11

We conclude that Dr. Langeland's testimony established a reasonable medical probability that Weeks's injuries were caused by repetitive trauma and an acute trauma and that the foundation of his expert opinion is sound. *See Marks*, 261 S.W.3d at 271-72 (concluding that doctor's expert testimony was based on a reasonable medical probability because his testimony—based on his physical exam of the worker, review of the objective data in the worker's medical records, and knowledge of the working conditions surrounding the injury—established the source and severity of the worker's injury). His physical exam of Weeks demonstrates an appropriate methodology, and his reliance on the medical reports of the other doctors shows that his opinion was based on more than subjective speculation. Dr. Langeland offered reliable testimony that Weeks suffered both a specific acute trauma caused by the jerking motion of jumping out of the sleeper berth and a repetitive trauma to his back from years of driving an 18-wheeler on rough roads. Langeland's testimony demonstrated that his causation opinions and opinions regarding repetitive trauma injuries had a reliable foundation. We, therefore, cannot say that the trial court abused its discretion in admitting the testimony of Dr. Langeland. Old Republic's fifth issue is overruled.

3. Testimony of Weeks and Millner

By its sixth issue, Old Republic objects to the admission of Weeks and Millner's testimony regarding (1) the effects on the human body of riding in an 18-wheeler, (2) the difference in the effect on the human body of riding in an 18-wheeler versus riding in a standard vehicle, and (3) the effect of various safety devices in Roadway's trucks. Old Republic contends that expert testimony was required to establish these facts and that

12

the district court erred in admitting the testimony of Weeks and Millner because they were never properly designated and qualified as experts. Again, we disagree.

Under the Texas Rules of Evidence, a lay witness may offer his opinions at trial so long as those opinions are "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX. R. EVID. 701. The witness's opinion is based on his "perception" if the witness "personally observed or experienced" the events about which he is testifying. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). The opinions, beliefs, and inferences of the witness are admissible "as long as they are drawn from his . . . own experiences or observations." *Id*.

At trial, Weeks testified that his father was a trucker, he had been around 18-wheelers his whole life, and at the time of his accident, he had been driving an 18-wheeler professionally for nearly six years. He also testified that he had been driving passenger vehicles since he was sixteen-years-old. Millner testified that he had decades of experience driving 18-wheelers and standard passenger vehicles. Weeks and Millner offered similar testimony regarding their driving experiences. They both testified that the route they traveled to and from Houston on their normal run to Valdosta, Georgia was continually under construction and that the roads were incredibly rough. Weeks and Millner described in detail their personal experiences of driving both an 18-wheeler and a standard passenger vehicle on rough roads. They then compared the riding conditions of the vehicles and stated their opinions that, although a passenger will feel some bumps in a standard vehicle on a bumpy road, those bumps are minor

13

compared to the jarring feeling Weeks and Millner experienced while riding over the same rough road in an 18-wheeler. Both Weeks and Millner also testified that they had on many occasions ridden in Roadway trucks with safety equipment and had personal experience dealing with the safety equipment.

We find that the testimony offered by Weeks and Millner at trial was based on their personal experiences as drivers of both 18-wheelers and standard vehicles. Their opinions were based on their observations of road and riding conditions. Because of their personal experiences, their testimony certainly helped the district court to better understand the facts in issue. Therefore, we conclude that the district court properly admitted the testimony of Weeks and Millner, and we overrule Old Republic's sixth issue.

## C. Sufficiency of Compensable "Injury" Evidence

By its third issue, Old Republic contends that Weeks failed to introduce legally sufficient evidence to prove he sustained a compensable injury on September 14, 2004, as defined by the labor code. *See* TEX. LAB. CODE ANN. § 401.011(10) (Vernon 2006). For that reason, Old Republic argues that the district court erred in entering judgment in favor of Weeks and issuing Finding of Fact Number One and Conclusion of Law Number Five. The district court's findings include mixed questions of law and fact.[9][8]

---

[8] Finding of Fact Number One states that Weeks "proved by a preponderance of the evidence that[,] on September 14, 2004[,] he did sustain a compensable low back injury while in the course and scope of his employment." Conclusion of Law Number Five states that Weeks "sustained a compensable injury to his low back on September 14, 2004."

[9] For example, the district court's first finding of fact states that Weeks "proved by a preponderance of the evidence that, on September 14, 2004, he did sustain a *compensable* low back injury while *in the course and scope of employment*." (Emphasis added). The court's finding is a mixed question of law and fact

---

1. Standard of Review

When the trial court's findings involve questions of law and fact, we review the court's decision for an abuse of discretion. *Int'l Freight Forwarding, Inc. v. Am. Flange*, 993 S.W.2d 262, 267 (Tex. App.–San Antonio 1999, no pet.). We defer to the court's factual determination, if supported by the evidence, and review the legal conclusions de novo. *Id*. "[T]he trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record." *Remington Arms Co., Inc. v. Luna*, 966 S.W.2d 641, 643 (Tex. App–San Antonio 1998, pet. denied).

2. Discussion

The term "injury" is defined as "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm." TEX. LAB. CODE § 401.011(26). A "compensable injury" is defined as "an injury that arises out of and in the course and scope of employment . . . ." TEX. LAB. CODE ANN. § 401.011(10). An injury resulting from an "activity that originates from the employment" and suffered "while the employee is actually engaged in furthering the employer's business" is considered an injury sustained in the course and scope of employment. *Tex. Workers' Comp. Ins. Fund v. Rodriguez*, 953 S.W.2d 765, 768 (Tex. App.–Corpus Christi 1997, writ denied). If the injury ensues "from a risk or hazard that is reasonably inherent or incident" to the business, the injury originates from the employment. *ESIS, Inc.*

---

because the court both finds that Weeks suffered an injury and concludes that the injury was in the course and scope of employment and therefore compensable under the labor code.

15

*Servicing Contractor v. Johnson*, 908 S.W.2d 554, 557 (Tex. App.–Fort Worth 1995, writ denied).

Both Weeks and Millner testified that on the trip in which Weeks was injured and on other trips, they were subject to frequent bumps, potholes, grade changes, and washboards. Both testified that the rough road conditions are more hazardous for someone driving an 18-wheeler than someone driving a standard vehicle. Weeks testified that, on September 14, 2004, he experienced severe lower back pain and radiating leg pain when he twisted up and out of bed and jumped out of the sleeper berth in response to Millner's call that it was Weeks's turn to drive. In his testimony, Millner confirmed that he observed that Weeks was in severe pain after he jumped out of the sleeper berth. As previously discussed, Weeks presented expert testimony from Dr. Langeland concerning the extent and nature of his injuries. Weeks also offered numerous exhibits to the court, all of which were admitted without objection by Old Republic, showing that he had been diagnosed with soft tissue lower back injuries, multiple severe disc bulges, and an annular tear to one of his discs. Dr. Langeland testified that his review of Weeks's medical records revealed that Weeks suffered both general, degenerative disc damage and an acute traumatic injury. Dr. Langeland concluded that Weeks's degenerative injury is particularly severe for a man his age and can be explained by the fact that Weeks was exposed to vertical axial loading on a regular basis. Dr. Langeland further concluded that the nature of Weeks's acute injury is consistent with Weeks's and Millner's testimony that Weeks had jumped up quickly from the sleeper berth in a twisting motion, as Weeks had done when he heard Millner's

16

call from the front of the cab.

We conclude there is ample evidence in the record to prove that Weeks suffered a compensable injury in the course of his employment with Roadway. Weeks's evidence proves that he suffered a physical injury to his lower back as a result of work-related activities. His evidence establishes that repetitive exposure to rough road conditions weakened his back, ultimately leading to the acute injury he sustained on September 14, 2004, when he hurriedly twisted out of bed to begin his driving shift. Weeks experienced this injury when he was in the process of furthering Roadway's business, and his injuries are directly linked to risks and hazards inherent to his employment as a line-haul driver on rough roads.

In light of this overwhelming evidence, we cannot say that the district court abused its discretion in finding that Weeks suffered an injury to his lower back. Furthermore, we conclude that the district court properly applied the law to the facts in concluding that Weeks's September 14, 2004 injury was compensable under the labor code. *See* TEX. LAB. CODE ANN. § 401.011(10). Accordingly, we overrule Old Republic's third issue.

D. Sufficiency of Compensable "Repetitive Trauma Injury" Evidence

In its fourth issue, Old Republic charges that there was neither factually nor legally sufficient evidence to support the district court's finding that Weeks suffered a repetitive trauma injury in the course and scope of his employment.

1. Standard of Review

A trial court's findings are reviewed for sufficiency of the evidence; we will treat

17

the district court's findings in the same manner as a jury's verdict. *Larkins*, 258 S.W.3d at 689. When challenging the legal sufficiency of the evidence, the appellant must demonstrate on appeal that there is no evidence to support the adverse filing. *Id*.; *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469-70 (Tex. App.–Corpus Christi 2008, pet. filed). The court will consider all evidence in the record in a light most favorable to the verdict, "crediting favorable evidence if a reasonable factfinder would and disregarding contrary evidence unless a reasonable factfinder would not." *Larkins*, 258 S.W.3d at 689 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). The evidence for a vital fact is legally insufficient when:

> (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of a vital fact.

*City of Keller*, 168 S.W.3d at 810. No more than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citation omitted).

When the appellant challenges the factual sufficiency of an adverse finding on which the other party had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 542 (Tex. App.–Austin 2006, pet. denied). We will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding. *Kloesel*, 266 S.W.3d at 470. We will set aside the district

18

court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*

2. Discussion

Old Republic complains that the district court's finding that Weeks sustained a repetitive trauma injury was unsupported by the evidence. "Repetitive trauma injury" is defined as "damage or harm to the physical structure of the body occurring as the result of repetitious, physically traumatic activities that occur over time and arise out of and in the course and scope of employment." TEX. LAB. CODE ANN. § 401.011(36). As is the case with a one-time acute injury, a repetitive trauma injury must be suffered in the course and scope of employment to be compensable under the labor code. TEX. LAB. CODE ANN. § 410.011(10).

As discussed at length in the other parts of this opinion, Weeks produced a plethora of evidence at trial regarding his injuries. Specifically, both Weeks and Millner testified that their route from Houston to and from Valdosta, Georgia exposed them to incredibly rough road conditions. Both Weeks and Millner also testified that the experience of driving an 18-wheeler over rough roads is entirely different than driving a standard vehicle over the same roads. They stated that the minor bumps felt while riding in a regular car over a rough road do not compare to the extreme jarring and jerking experienced in an 18-wheeler. Weeks also produced the expert testimony of Dr. Langeland, who confirmed that repetitive exposure to these rough conditions would result in excessive vertical axial loading on the driver's spine. Dr. Langeland testified that, because of his employment as a line-haul driver, Weeks's continued exposure to

19

this repetitively traumatic condition likely caused his spinal injuries, in particular the severe bulging discs revealed by Weeks's medical records.

Considering the evidence in a light most favorable to Weeks, we conclude that Weeks produced legally sufficient evidence to prove he suffered a repetitive trauma injury in the course of his employment with Roadway. He provided testimony, summarized above, and exhibits showing he was exposed to hazardous rough road conditions while driving for Roadway and that his repetitive exposure to those conditions caused a physical injury to his lower back. The abundance of evidence considered by the district court was certainly more than a mere scintilla.

We also conclude that Weeks produced factually sufficient evidence to establish he suffered a compensable repetitive trauma injury. Considering, weighing, and examining all of the evidence in the record, both in support of and contrary to the finding, we are of the opinion that the district court's finding with regard to Week's repetitive trauma injury is neither clearly wrong nor manifestly unjust.

We overrule Old Republic's fourth issue.

E. Medical Expenses

In its seventh and final issue, Old Republic challenges the district court's conclusions of law that determine it was liable for Weeks's medical expenses. Old Republic claims that the district court erred in so concluding because medical expenses were never an issue brought before the TWCC appeals panel.

1. Standard of Review

We review a trial court's conclusions of law de novo. *Villagomez v. Rockwood*

20

*Specialties, Inc.*, 210 S.W.3d 720, 727 (Tex. App.–Corpus Christi 2006, pet. denied). We will uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id*.

2.  Discussion

The district court determined in its conclusions of law that Old Republic was liable to Weeks for medical expenses arising out of his injury and repetitive trauma injury. By this issue, Old Republic appears to argue that the district court had no jurisdiction to consider that issue because it was not expressly raised in Weeks's request for review to the TWCC appeals panel. It is true that "[j]udicial review is restricted to issues raised before the appeals panel." *Lopez v. Zenith Ins. Co.*, 229 S.W.3d 775, 779 (Tex. App.–Eastland 2007, no pet.)*; see* Tex. Lab. Code Ann. § 410.302(b) (Vernon 2006). Here, we cannot say that Weeks failed to raise the issue of medical expenses.

Weeks's allegations must be liberally construed in his favor. *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 517 (Tex. 2007). Following the hearing officer's denial of his claims, Weeks raised, among others, the following issue: whether he sustained a compensable injury on September 14, 2004. As previously described, a "compensable injury" is defined as "an injury that arises out of and in the course and scope of employment . . . ." Tex. Lab. Code Ann. § 401.011(10). Under the code, insurance carriers are liable for compensation to an employee who has sustained a compensable

21

injury. *See* TEX. LAB. CODE ANN. § 406.031(a)(2) (Vernon 2006) (stating that an insurance carrier is required to compensate an employee for an injury arising "out of and in the course and scope of employment"). "Compensation" is defined as the payment of "benefits," which includes medical expenses. TEX. LAB. CODE ANN. §§ 401.011(5),(11).

We conclude that the question of Old Republic's liability for medical expenses was included within the compensable injury issue. Its liability would have been a foregone conclusion once it was determined that Weeks's injury was compensable under the code. When Weeks brought, before the appeals panel, the issue of whether he suffered a compensable injury on September 14, 2004, he implicitly asked the appeals panel to consider the medical expenses that would necessarily follow from an favorable decision. It is not an issue that stands apart.

Because we are required to liberally construe Weeks's allegations, we conclude that he raised the issue of medical expenses within his compensable injury issue. *See Morales*, 241 S.W.3d at 517. As the district court had subject-matter jurisdiction over Weeks's compensable injury issue, we find no merit in Old Republic's assertion that the court lacked jurisdiction to consider medical expenses. Moreover, because the district court's finding of fact that Weeks suffered a compensable injury supports the legal conclusion that Old Republic is liable for medical expenses, we cannot say that the district court erred in its conclusions of law.

We overrule Old Republic's seventh issue.

### III. CONCLUSION

22

We affirm the district court's judgment.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 11th day of June, 2009.