NUMBER 13-07-00449-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

CHARLES LYONS, Appellant,


v.


STATE OFFICE OF RISK MANAGEMENT Appellee.

 


On appeal from the 136th District Court

of Jefferson County, Texas.

 


 MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Benavides


 Memorandum Opinion by Chief Justice Valdez
 

 Appellant, Charles Lyons, appeals a take-nothing judgment based on a jury verdict
finding that he did not sustain a compensable injury. In three issues, Lyons contends that: 
(1) the evidence is legally insufficient to support the jury's verdict; (2) the trial court abused
its discretion by refusing to submit Lyons's proposed definition of "injury"; and (3) the
evidence is factually insufficient to support the verdict. We affirm.

I. Background

 Lyons filed a claim with the Texas Department of Insurance, Division of Workers'
Compensation (DWC), formerly known as the Texas Workers' Compensation Commission. 
At a contested hearing, the hearing officer determined that Lyons did not sustain a
compensable injury and did not have resulting disability. Upon review of the determination, 
the DWC appeals panel determined that Lyons had sustained a compensable injury and
disability. The State Office of Risk Management (SORM) brought a lawsuit challenging the
appeals panel's finding. See Tex. Labor Code Ann. § 410.301(a) (Vernon 2006). At trial,
SORM called Lyons and Dr. Donald Baxter. Lyons did not call any witnesses.

A. Lyons's Testimony

 Lyons testified that on April 5, 2004, he sustained an injury to his left foot while
working as a Texas Youth Commission dorm supervisor. In an effort to prepare the facility
for an upcoming investigation, Lyons went into a supply closet to check the chemical log
book. After checking the log, Lyons walked approximately three steps and pushed open
the door to exit the closet. As he walked out of the closet, the door, equipped with a device
that causes it to close automatically, began to close. As "the door was coming back . . .
[Lyons] kind of grabbed the door and pivot[ed] to go around it." Lyons also described the
event as follows: "It was coming back toward me; so, I had to extend my right hand and
stop it before it came back and slammed on me and that's when I kind of stepped. I like
[sic] outward and around it." As he moved, Lyons heard a "pop" in his left foot. 
Immediately in pain, Lyons thought that he must have been hit in the foot by something
thrown by an inmate. Upon later examination, Lyons learned that nothing was thrown. 
Lyons did not fall, but leaned against a nearby bunk bed while a maintenance worker who
allegedly heard the pop rushed to aid him. 

 The nurse at the facility's infirmary noticed swelling in Lyons's foot; later that day,
Lyons went to the emergency room. Although Lyons could not remember what he told the 
emergency room doctors, he remembered that x-rays were taken, and a doctor told him
that his left foot was fractured. The doctor put a soft splint cast on Lyons's left foot and told
him to stay home from work for a week. 

B. Lyons's Medical Records

 The following is a summary of Lyons's medical records, and the information
contained therein, admitted into evidence.

 Prior to April 5, 2004, Lyons was treated for diabetes by Dr. W.O. Pickard. Dr.
Pickard's records detail Lyons's diabetes treatment from February 2, 1996 to April 2, 2004,
and do not mention neuropathic foot problems.

 Lyons's April 5, 2004 emergency room record states that Lyons was "walking and
felt a pop." The "chief complaint" section of the record states, "L foot pain onset today. 
Denies injury." Lyons's emergency room record does not mention neuropathic foot
problems. 

 On April 12, 2004, Lyons visited chiropractor, Dr. Steven J. Enabnit. Medical
records obtained from Dr. Enabnit mention a fracture of Lyons's fifth metatarsal, but do not
mention neuropathy. Additionally, Dr. Forney Fleming, an orthopedic surgeon, treated
Lyons's fracture from April 20, 2004 to August 3, 2004. Records from Lyons's April 20,
2004 visit refer to Lyons's injury as a "Jones fracture." On June 2, 2004, Dr. Fleming's
records state: "Mr. Lyons was first evaluated by me on 4/20/04. He gave a history of a
twisting injury to his foot accompanied by a pop and pain." Dr. Fleming's records do not
mention neuropathy.

 In November 2004, Lyons sustained a second injury to his left foot. (1) Dr. Charles
Domingues, an orthopedic surgeon, provided care to Lyons after he sustained the second
injury. On April 21, 2005, Dr. Domingues wrote: "Mr. Lyons is a gentleman who I am
seeing and treating in my office for a neoropathic midfoot problem involving the left foot. 
This is related to his diabetes. This is all referred back to a specific worker's comp injury
that occurred in the past."

C. Dr. Baxter's Testimony

 Dr. Baxter, a board certified orthopedic surgeon, was called as SORM's medical
expert. Dr. Baxter's qualifications as an expert in foot and ankle problems are
uncontroverted. Dr. Baxter testified that he had reviewed Lyons's medical records, as well
as the decisions from the initial DWC hearing and the DWC appeals panel. 

 Dr. Baxter testified that although Lyons's medical records describe the April 5, 2004
injury as a "Jones fracture," it is his opinion that the injury was really a stress fracture in the
fifth metatarsal. (2) Dr. Baxter stated, that while it is common for people with diabetes and
neuropathic feet to have stress fractures, they typically do not have Jones fractures. (3) Dr.
Baxter stated that stress fractures "gradually progress and develop and then there is a
certain point where the bone will give way."

 Dr. Baxter based his opinion that Lyons's injury was a stress fracture on: (1)
medical records describing Lyons's movement to avoid the door as "walking"; (2) Lyons's
history of diabetes; and (3) the difficulty of the fracture to heal. Dr. Baxter testified that it
is "highly unlikely" that someone would sustain a stress fracture from a single incident. He
testified that, according to the medical records, Lyons had a difficult time controlling his
diabetes, and that it was "very likely" that the stress fracture was a result of Lyons's
diabetic condition. 

 Dr. Baxter testified that in reading all the records, the description of the events
surrounding the moment that Lyons heard a pop were described as "walking around a
door" or "simply walking." Based on the foregoing, Dr. Baxter opined that Lyons's stress
fracture was not related to his employment, but rather, was related to walking. Dr. Baxter
testified that the motion involved in walking around a door does not involve a motion
outside the realm of "just walking." Dr. Baxter stated that, "Where you get in[to] problems
with injuries on-the-job is when there is an inversion injury where the ankle actually turns
all the way over and you fracture bones, but simply walking and pivoting does not cause
these fractures, particularly a Jones fracture."

 Dr. Baxter further testified that another indication Lyons's fracture was a stress
fracture rather than a Jones fracture was that Lyons's fracture did not heal easily and
"[p]eople with neuropathic stress fractures have a very difficult time healing these, and they
often result in another injury or fractures again."

 On cross examination, Dr. Baxter acknowledged that the medical charts of the
doctors who treated Lyons's left foot noted that Lyons had suffered a Jones fracture. He
testified that although a Jones fracture and a stress fracture could look the same in an x-ray, he had not reviewed Lyons's x-ray. He further acknowledged that a medical history
provided by Dr. Fleming stated that Lyons "gave a history of a twisting injury to his foot
accompanied by a pop and pain." Additionally, Dr. Baxter acknowledged that he found no
indication that Lyons suffered from foot problems prior to April 5, 2004.

 After weighing all the evidence, the jury found that Lyons did not sustain a
compensable injury and did not reach the issue of disability because it was conditioned
upon finding a compensable injury. Based on this verdict, the trial court rendered a
judgment that reversed the DWC's finding. This appeal ensued.

II. Legal Sufficiency In his first issue, Lyons contends that there is no evidence to support the jury's
verdict that he did not suffer a compensable injury. Specifically, Lyons argues that SORM
"based its case on its expert's testimony, which consisted of speculation and conjecture,
piling inference upon inference."

A. Standard of Review and Applicable Law

 As the party appealing the appeals panel's decision, SORM had the burden at trial
to prove, by a preponderance of the evidence, that Lyons did not suffer a compensable
injury. See Tex. Lab. Code Ann. §§ 410.301(a), 410.303 (Vernon 2006); Morales v. Liberty
Mut. Ins. Co., 241 S.W.3d 514, 516 (Tex. 2007). When an appellant attacks the legal
sufficiency of an adverse finding on an issue for which it did not have the burden of proof,
the appellant must demonstrate that there is no evidence to support the adverse finding;
therefore, Lyons must demonstrate that there is no evidence to support the jury's verdict
that he did not suffer a compensable injury. See State Office of Risk Mgmt. v. Larkins, 258
S.W.3d 686, 689 (Tex. App.-Waco 2008, no pet.); see also Ins. Network of Tex. v.
Kloesel, 266 S.W.3d 456, 469-70 (Tex. App.-Corpus Christi 2008, pet. filed). We will
consider all evidence in the record in a light most favorable to the verdict, "crediting
favorable evidence if a reasonable factfinder would and disregarding contrary evidence
unless a reasonable factfinder would not." Larkins, 258 S.W.3d at 689 (citing City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)). We will sustain a challenge to the legal
sufficiency of the evidence only if: (1) there is a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact. City of Keller, 168 S.W.3d at 810. No more than a scintilla of evidence exists
when the evidence is "so weak as to do no more than create a mere surmise or suspicion"
that the fact exists. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (citation
omitted). 

 The term "injury" is defined as "damage or harm to the physical structure of the body
and a disease or infection naturally resulting from the damage or harm." Tex. Lab. Code
§ 401.011(26) (Vernon Supp. 2008). A "compensable injury" is "an injury that arises out
of and in the course and scope of employment . . . ." Id. § 401.011(10) (Vernon Supp.
2008). An injury resulting from an "activity that originates from the employment" and
suffered "while the employee is actually engaged in furthering the employer's business" is
considered an injury sustained in the course and scope of employment. Tex. Workers'
Comp. Ins. Fund v. Rodriguez, 953 S.W.2d 765, 768 (Tex. App.-Corpus Christi 1997, writ
denied). 

 Expert testimony is necessary to establish causation as to medical conditions
outside the common knowledge and experience of jurors. Guevara v. Ferrer, 247 S.W.3d
662, 665 (Tex. 2007). "[Expert] opinion testimony that is conclusory or speculative is not
relevant evidence, because it does not tend to make the existence of a material fact 'more
or less probable.'" Coastal Transp. Co. v. Crown Cent. Petro. Corp., 136 S.W.3d 227, 232
(Tex. 2004); see also Tex. R. Evid. 401. "When the expert 'brings to court little more than
his credentials and a subjective opinion,' this is not evidence that would support a
judgment." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 712 (Tex. 1997)
(citation omitted).

 When the challenge to expert testimony requires the court to evaluate the underlying
methodology, technique, or foundational data used by the expert in forming his or her
opinion, a timely objection must be made in the trial court when the testimony is offered to
preserve the issue for appellate review. Coastal Transp. Co., 136 S.W.3d at 233; Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 409 (Tex. 1998); Welch v. McLean, 191 S.W.3d
147, 158 (Tex. App.-Fort Worth 2005, no pet.). However, no objection is required where
there is no need to go beyond the face of the record. Coastal Transp. Co., 136 S.W.3d at
233; Welch, 191 S.W.3d at 158.

B. Analysis

 Lyons contends that SORM "based its case on [Dr. Baxter]'s testimony, which
consisted of speculation and conjecture, piling inference upon inference." As such, Lyons
further contends that "the vital fact at issue is whether Lyons sustained a compensable
injury on April 5, 2004, or whether that injury was a stress fracture resulting from a
neuropathic or Charcot condition that had developed prior to April 5, 2004." Lyons further
contends that "[a] vital fact--such as whether Lyons suffered a compensable injury on April
5, 2004--cannot be established 'by piling inference upon inference' or by drawing
unreasonable inferences from other facts and circumstances." (4) No timely objection
challenging the reliability of Dr. Baxter's opinion exists in the record; therefore, we review
only the face of the record to test Dr. Baxter's reliability. See Welch, 191 S.W.3d at 158. 

 By categorizing the jury's finding that Lyons did not sustain a compensable injury
on April 5, 2004 as a "vital fact," Lyons attempts to establish the existence of inferences
that the jury was prohibited from making. The vital facts required to support the jury's
finding are: (1) whether Lyons suffered an injury; and (2) whether such injury arose out of
and in the course and scope of employment. See Tex. Lab. Code § 401.011(10), (26). 
Neither party disputes that Lyons suffered an injury; therefore, we focus our analysis on
whether sufficient evidence exists to prove the vital fact that Lyons's injury did not arise out
of and in the course and scope of employment.

 In order to meet its burden of proving that Lyons's fracture did not arise out of and
in the course and scope of employment, SORM offered Dr. Baxter's expert medical opinion
that Lyons's injury was a neuropathic stress fracture caused by pre-existing diabetes, and
not arising out of Lyons's employment. The critical determination the jury had to make was
whether Lyons's fracture was a Jones fracture or a neuropathic stress fracture. Dr.
Baxter's testimony established that this distinction is pertinent because, while a Jones
fracture can arise from a single occurrence in the course and scope of employment, it is
"highly unlikely" that a neuropathic stress fracture will arise from a single occurrence. Dr.
Baxter testified that a Jones fracture is caused by "[a] violent twisting or turning of the foot." 
Lyons's emergency room records stated that Lyons was "walking and felt a pop." Based
on this description, Dr. Baxter concluded that Lyons's movement at the time of the incident
did not "take it outside the realm of actually just walking." Dr. Baxter further testified that
even if Lyons "pivoted," as he stated during his trial testimony, that action would amount
to no more than walking. According to Dr. Baxter, "[w]here you get in problems with
injuries on-the-job is when there is an inversion injury where the ankle actually turns all the
way over and you fracture bones; but simply walking and pivoting does not cause these
fractures, particularly a Jones fracture." If the jury chose to believe that Lyons was merely
walking when he sustained the injury, they could have inferred that Lyons suffered a stress
fracture.

 Moreover, Dr. Baxter has been a board certified orthopedic surgeon, specifically
dealing with the foot and ankle, for more than thirty years. His qualifications as an expert
are uncontested. In addition to basing his opinion on the emergency room records of
Lyons's description of his movement around the closet door, Dr. Baxter also reviewed
additional medical records to assess Lyons's health before and after April 5, 2004. Dr.
Baxter testified that, since 1996, Lyons had experienced difficulty controlling his diabetes. 
Although medical records did not indicate that Lyons had neuropathic feet before April 5,
2004, Dr. Baxter testified that if an individual has difficulty controlling his diabetes, it is
"highly likely" that he will have neuropathy in his feet. Dr. Baxter further testified that
neuropathy causes a loss of sensation over time in the feet and that such a loss of
sensation makes it difficult to diagnose a stress fracture. Dr. Baxter noted that "people with
neuropathic stress fractures have a very difficult time healing." Medical records, as well
as Lyons's testimony, indicated that he had experienced problems healing. 

 Although reasonable and fair-minded people could differ in their conclusions of
whether Lyons suffered a compensable injury, the evidence presented falls within the zone
of reasonable disagreement. See City of Keller, 168 S.W.3d at 822. We conclude that
reasonable and fair-minded people could have found that Lyons did not suffer a
compensable injury. Lyons's first issue is overruled.

IV. Factual Sufficiency

 In his third issue, Lyons contends the jury's finding that he did not suffer a
compensable injury is based on factually insufficient evidence, or is against the great
weight and preponderance of the evidence. 

A. Standard of Review

 When the appellant challenges the factual sufficiency of an adverse finding on which
the other party had the burden of proof, the appellant must demonstrate that there is
insufficient evidence to support the adverse finding. Tex. Prop. & Cas. Guar. Ass'n v. Nat'l
Am. Ins. Co., 208 S.W.3d 523, 542 (Tex. App.-Austin 2006, pet. denied). We will
consider, weigh, and examine all of the evidence in the record, both in support of and
contrary to the finding. Kloesel, 266 S.W.3d at 470. The district court's finding will be set
aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and manifestly unjust. Id. 

B. Analysis

 Lyons's factual insufficiency arguments are analogous to those he advances to
prove no evidence. Lyons argues: (1) "no evidence supports Dr. Baxter's theory of
neuropathy or Charcot condition before the April 5, 2004, injury"; (2) "the evidence shows
that there is still no indication of neuropathy or Charcot condition for several months after
the April injury"; (3) "all the evidence shows that as of Lyons' [sic] second injury in
November 2004, there is still no neuropathy or Charcot condition"; (4) "the evidence shows
Charcot condition first appears in December 2004"; (5) "the evidence shows that
neuropathy first appears in January 2005"; and (6) "Dr. Peter Foox, the Commission's
designated doctor for an independent medical exam after the November injury,
acknowledged that Lyons' [sic] April 2004 injury had been diagnosed as a 'Jones
Fracture.'" Lyons presented no witnesses at trial, and he bases his arguments on the
medical records introduced into evidence and relied on by Dr. Baxter. 

 Although Lyons devotes approximately twenty-four pages of his appellate brief to
challenging the factual sufficiency of the evidence, he fails to cite any authority for his
argument. See Tex. R. App. P. 38.1(i) (providing that the brief must contain a clear and
concise argument for the contentions made with appropriate citations to authorities). In
any event, it is the sole prerogative of the jury to determine the weight and credibility of the
evidence. See Welch, 191 S.W.3d at 160. Examining all of the evidence, both for and
against the jury's verdict, we cannot say that the evidence supporting the jury's finding that
Lyons did not suffer a compensable injury is so weak, or against the great weight and
preponderance of the evidence, that the jury's verdict should be set aside. Id. at 160-61. 
Lyons's third issue is overruled.

III. Jury Charge

 In his second issue, Lyons contends that the trial court abused its discretion by
denying his requested definition of "injury," which included aggravation of pre-existing
conditions. Rule 278 of the Texas Rules of Civil Procedure states that "[f]ailure to submit
a definition . . . shall not be deemed a ground for reversal of the judgment unless a
substantially correct definition . . . has been requested in writing and tendered by the party
complaining of the judgment." Tex. R. Civ. P. 278. Moreover, rule 273 states that "[a]
request . . . for . . . definitions . . . shall be made separate and apart from . . . objections to
the court's charge." Tex. R. Civ. P. 273.

 At the charge conference, Lyons orally objected to the definition of injury and
requested that the following be added to the definition: "Injury also includes an aggravation
of a prior injury if the aggravation occurs in the course and scope of employment." 
However, Lyons made no written request for such a definition. Because Lyons did not
make a written request for submission of this definition, he has failed to preserve this issue. 
 See Coley v. Baylor Univ., 147 S.W.3d 567, 570 n.3 (Tex. App.-Waco 2004), rev'd on
other grounds, 221 S.W.3d 599 (Tex. 2007); see also Gerdes v. Kennamer, 155 S.W.3d
523, 535 (Tex. App. Corpus Christi 2004) ("Where the complaint is that the trial court failed
to submit a particular definition or instruction, the complaining party must have presented
a written request for its inclusion, tendering the proposed definition or instruction in
substantially correct wording."). Accordingly, we overrule Lyons's second issue.

IV. Conclusion

 Having overruled all of Lyons's issues, we affirm the trial court's judgment.

 

 ROGELIO VALDEZ

 Chief Justice

 


Memorandum Opinion delivered and

filed this 25th day of August, 2009. 

1. The November 2004 injury is not at issue in this case.
2. Dr. Baxter described the difference between a "Jones fracture" and a stress fracture as follows:


Generally, a Jones fracture occurs when a basketball player comes down and turns the ankle
and really fractures the bone[,] whereas the stress fracture occurs over time and usually [is]
associated with other problems such as neuropathic feet, diabetes, and problems where you
lose the sensation in the foot and have problems.
3. Neuropathy is a "[p]rogressive degeneration of weight bearing joints, especially of the foot and ankle,
associated with sensory loss due to nerve damage in those areas." Ida G. Dox et al., Attorney's
Illustrated Medical Dictionary N:99 (West Supp. July 2009).
4. We note that "opinions of medical experts are an exception to the rule against inference stacking." 
Welch v. McLean, 191 S.W.3d 147, 161 n.7 (Tex. App.-Fort Worth 2005, no pet.) (citing Tex. Empl. Ins. Ass'n
v. Talmadge, 256 S.W.2d 945, 951-52 (Tex. Civ. App.-Beaumont 1953, writ ref'd n.r.e); S. Underwriters v.
Hoopes, 120 S.W.2d 924, 926 (Tex. Civ. App.-Galveston 1938, writ dism'd); White v. Presnall, No.
05-93-01029-CV, 1994 WL 416724, at *6 (Tex. App.-Dallas Aug. 10, 1994, writ denied)).