**STATE OFFICE OF RISK MANAGEMENT,**
Appellant,

v.

Carolyn LARKINS, Appellee.

No. 10–06–00338–CV.

Court of Appeals of Texas, Waco.

May 21, 2008.

**688**

Kerry V. O'Brien, Asst. Atty. General–Tort Litigation Division, Austin, TX, for Appellant.

Stephen R. Goetzmann, Dallas, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This is a workers' compensation case arising out of an on-the-job assault by a patient against Carolyn Larkins, an employee of the Texas State Hospital in Vernon. After exhausting her administrative remedies before the Texas Workers' Compensation Commission (TWCC), Larkins appealed the adverse determination in district court. After a bench trial, the trial court found in Larkins's favor and reversed the TWCC Appeals Panel decision. The State Office of Risk Management (SORM) appeals.[1] Finding the evidence legally insufficient to support the judgment, we will reverse the trial court's judgment and remand for further proceedings.

## Background

In October, 2000, Larkins was monitoring patients in the gymnasium when a mental-health patient pushed her head and back into a wall. Larkins saw a physician the next day and complained of lower back pain. This physician sent her to a neurologist, who administered steroidal injections in her lower back. As her symptoms persisted, Larkins began to experience headaches and behavioral changes and was unable to return to work. Over the course of the next year, Larkins complained that she experienced memory loss, had constant pain, and was unable to sleep; she visited several doctors who gave varying diagnoses.

Dr. Polatin, a psychiatrist appointed by the TWCC, found that Larkins had experienced mental illness and gave her a 70% impairment rating based on post-traumatic disorder, major depressive syndrome, and

---

1. The State is self-insured through the State Office of Risk Management with respect to its employees' compensable injuries. TEX. LAB. CODE ANN. §§ 412.011, 412.0122 (Vernon 2006).

post-concussion syndrome. A TWCC hearing officer later ruled that this impairment rating was incorrect because Larkins's compensable injury did not include "psychological problems." In January 2004, her husband filed suit pro se as her guardian for judicial review of the TWCC decision. At trial, Larkins testified but was unable to remember various details of the assault or her subsequent medical visits. Larkins also introduced several medical records that contained information about her injury and diagnoses. The trial court reversed the TWCC appeals panel decision and found that Larkins's compensable injury includes major depressive disorder, anxiety, and post-traumatic stress disorder and that her correct impairment rating is 70%.

## Standard of Review

In its first issue, SORM asserts that there was no evidence to support the trial court's finding that Larkins's depression, anxiety and post-traumatic stress disorder are compensable. SORM did not have the burden of proof at trial.

■ We review a trial court's finding in the same manner as jury findings. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or

(d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995)).

## Necessity of Expert Testimony

■ The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer,* 247 S.W.3d at 662, 668–69 (Tex.2007) (explaining that "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence"); *see, e.g., Ins. Co. of N. Am. v. Myers,* 411 S.W.2d 710, 713 (Tex.1966) (holding that an "inference that a pre-existing tumor was activated and the deadly effects of a malignancy accelerated by an injury" was a "question of science determinable only from the testimony of expert medical professionals"); *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982) (holding that "the diagnosis of skull fractures is not within the experience of the ordinary layman" and therefore required expert testimony); *Kaster v. Woodson,* 123 S.W.2d 981, 983 (Tex.Civ.App.–Austin 1938, writ ref'd) ("What is an infection and from whence did it come are matters determinable only by medical experts."). However, cases have acknowledged an exception to the general rule where causation findings link-

ing events and physical conditions could, under certain circumstances, be sufficiently supported by non-expert evidence, such as lay testimony. *See Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46 (Tex.1969).

■ The adequacy of lay testimony to prove causation in workers' compensation cases has been limited to those cases where the general experience of, or common sense of, jurors is such that they can anticipate one event will follow another. *Id.* at 46. For lay testimony to be sufficient to prove causation, the testimony must prove at least that the injury in "reasonable probability" caused the claimed result. *Id.*

■ Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984) (holding that lay testimony could establish causal connection between chemical leak and Morgan's injuries when Morgan, who had previously been in good health, began experiencing symptoms such as watery eyes, blurred vision, headaches and swelling of the breathing passages four days after typesetting machine that sat two inches from her face was found to be leaking chemical fumes); *see also Griffin v. Texas Employers' Ins. Ass'n*, 450 S.W.2d 59, 61 (Tex.1969); *Insurance Co. of N. Am. v. Kneten*, 440 S.W.2d 52 (Tex. 1969).

We have previously reversed a directed verdict in a worker's compensation appeal involving carpal tunnel syndrome, even though no expert testimony was presented. *Saenz v. Ins. Co. of Pa.*, 66 S.W.3d 444 (Tex.App.–Waco 2001, no pet.). In *Saenz*, the insurance carrier argued that Saenz provided no evidence in her case-in-chief to link her hand injuries to her work as a

seamstress. Saenz did not provide expert testimony on causation; the only evidence on causation was her own lay testimony. We held:

> an injury arises out of employment if the employment is *a* producing cause— which means even if there are other causes for the injury, the employment need only be "a" cause. *Texas Workers' Compensation Ins. Fund v. Simon*, 980 S.W.2d 730, 736 (Tex.App.–San Antonio 1998, no pet.).
>
> . . .
>
> We believe this evidence establishes a sequence of events, from which the jury might have inferred, without the aid of expert medical testimony, that Saenz's work as a seamstress was "a" cause of her carpal tunnel syndrome. We find that some evidence was admitted in Saenz's case-in-chief to raise a fact issue on causation to be submitted to the jury.

*Id.* at 448.

Larkins argues that, under *Saenz*, lay testimony is sufficient in this case. However, *Saenz* is unlike our case because it involved an immediate, continuous, uninterrupted chain of events between the offending activity and the alleged occupational disease. Here we have attenuated causation, as there is an eight-month gap between the incident and the first psychiatric symptoms. The injury in *Saenz* was also logically related to the work activity. It is within reasonable probability that continuous and painful movement in the hands could lead to a hand-related injury such as carpal tunnel syndrome. *Id.*

Our case, however, is more like *Guevara*, where the Texas Supreme Court found lay evidence insufficient to support a finding that an automobile accident caused a million dollars in medical expenses. *Guevara*, 247 S.W.3d at 668–69. The Court concluded that expert medical evidence is

required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons. *Id.* at 664–65. In *Guevara*, Ferrer's father, Arturo, an eighty-six-year-old man, suffered several heart and abdominal injuries after being involved in a car accident. Arguing against a motion for a directed verdict, Ferrer argued that the evidence of the sequence of treatments following the accident combined with lay testimony about the accident and Arturo's having no abdominal problems or requiring a ventilator prior to the accident was sufficient to establish a causal relationship. The motion for directed verdict was denied and the jury found damages of $1.1 million for Arturo's medical expenses. On the defendant's motion for judgment notwithstanding the verdict, the trial court entered a take-nothing judgment as to Arturo.

The Court stated:

Non-expert evidence of circumstances surrounding the accident and Arturo's complaints is sufficient to allow a layperson of common knowledge and experience to determine that Arturo's *immediate post-accident condition* which resulted in his being transported to an emergency room and examined in the emergency room were causally related to the accident. Thus, the evidence is legally sufficient to support a finding that *some* of his medical expenses were causally related to the accident. On the other hand, the evidence is not legally sufficient to prove what the conditions were that generated all the medical expenses or that the accident caused all of the conditions and the expenses for their treatment.

*Id.* at 669–70.

Applying *Guevara* here, expert testimony would not be required to prove Larkins's back injuries, but we do not think the general experience of laypersons is adequate to evaluate the cause of her psychological injuries without expert testimony. A layperson's evaluation of Larkins's medical records might lead to a belief that the reported symptoms were caused by the head injury. However, an expert evaluating the same records might know that the head injury could not have caused the symptoms reported. In fact, many of the medical records conclude that Larkins's behavioral changes are not causally related to her assault. Because we hold that expert testimony was required to establish that Larkins's depression, anxiety, and post-traumatic stress disorder were causally related to her head injury and therefore compensable, we next turn to whether her medical records satisfy the expert testimony requirement.

### Medical Records as Expert Testimony

■ Larkins also argues that the medical records admitted into evidence constitute the necessary expert evidence. It appears that the direct question of whether medical records can be considered expert testimony is yet to be answered. The Houston First Court of Appeals came close when it hypothesized that if the appellant has introduced only the medical records, discharge summary, and other notes at trial, the appellant would not have carried his burden of reliability in causation evidence under the *Daubert/Robinson/Jordan* burden. *Coastal Tankships, U.S.A., Inc. v. Anderson,* 87 S.W.3d 591, 611 (Tex. App.–Houston [1st Dist.] 2002, no pet.).

■ Justice Brister's concurring opinion asserts several reasons why medical

records and reports should not be considered expert testimony. *Id.* at 618 (Brister, J. concurring). He notes that documents cannot replace expert testimony for several reasons. First, documents are not under oath. *Id.* Second, allowing documents to serve as expert testimony allows factfinders to reach the wrong conclusion by picking and choosing parts of the document and using them out of context. *Id.* Third, the wisdom of the rules of evidence does not allow documents in place of expert testimony because the rules bar the admission of "learned treatises" in place of expert testimony. *Id.;* TEX.R. EVID. 803(18) (providing statement from learned document may be read into evidence—though not received as an exhibit—if an expert is present to verify its reliability and explain what it means). However, the majority and Justice Brister conceded that if medical records can meet the requirements for reliability used to assess expert testimony, then a plaintiff can rely on his medical records to fulfill his expert testimony requirement. *Id.* at 610, 617. Expert causation evidence must rest in reasonable medical probability, and reasonable probability can be determined by a document's context and substance without a testifying expert. *Crye,* 907 S.W.2d at 500.

Assuming, as we do, that Larkins's medical records can be considered expert testimony, her medical records do not establish causation within reasonable medical probability. Larkins saw several doctors who gave varying diagnoses. Several of those medical records were admitted as evidence. If medical records are to be considered expert testimony, they must be evaluated applying the same principles used to evaluate the opinion of an expert. *Coastal,* 87 S.W.3d at 610.

We review an expert's testimony in its entirety and will not accept the expert's opinion as some evidence merely because the expert used "magic words." *Havner,* 953 S.W.2d at 711. In the medical context, expert testimony that is not based on reasonable medical probability, but relies instead on possibility, speculation, or surmise, does not assist the jury and cannot support a judgment. *See id.* at 712. The following non-exclusive factors may be considered in determining reliability: (1) the extent to which the expert's theory has been or can be tested; (2) the extent to which the expert's technique relies upon his own subjective interpretation; (3) whether the expert's theory has been subjected to peer review and publication; (4) the potential rate of error of the theory; (5) whether the expert's theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses that have been made of the expert's theory or technique. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex. 1995).

Dr. Nixon, a psychologist and Dr. Cernosek, a chiropractor, are the only health care providers to associate Larkins's mental disorders with her on-the-job injury. Dr. Nixon diagnosed post-concussion syndrome, dementia due to head trauma, mood disorder due to head injury, major depressive disorder (single episode reactive) and post-traumatic stress disorder, but he does not explain how the head injury could and did cause these psychiatric disorders. Further, Dr. Nixon's diagnosis appears to be largely based on Larkins's husband's version of her medical history. There is nothing in Dr. Nixon's report to indicate that he has the expertise to render an opinion on mental or psychiatric disorders caused by head injuries. The statements in Dr. Nixon's report do not rise to the level of reasonable medical

probability. *See Crye*, 907 S.W.2d at 499–500.

Dr. Cernosek, a chiropractor, diagnosed three conditions that he opined, "within medical probability," are directly related to Larkin's work injury: Displacement of lumbar intervertebral disc without myelopathy, myofascial pain syndrome, and muscular deconditioning syndrome. In that same report, Dr. Cernosek mentions "the psychosocial dysfunction associated with her on the job injury," "the psychosocial component of her injury," and "the psychosocial component and the changes that have happened due to the closed head injury." That is the extent of Dr. Cernosek's opinion on Larkins's psychiatric disorders. At no time does Dr. Cernosek identify the head injury, say who diagnosed the head injury, state how such a head injury could lead to "psychosocial changes," or how he has the expertise that would allow him to render an expert opinion on neuropsychiatry. *Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 48 (Tex.App.–Texarkana 2000, no pet.). Dr. Cernosek's statements are conclusory at best, and his opinions do not rest upon reasonable medical probability. Further, Dr. Cernosek is a licensed chiropractor. Not every medical doctor can qualify as an expert in every given case. *Id.* For Dr. Cernosek's opinions to be considered expert testimony, Larkins would have to show that Dr. Cernosek had medical expertise regarding psychological disorders caused by head injuries.

The TWCC-designated physician, Dr. Robinson, determined that the psychiatric disorders are not compensable and gave Larkins a 0% impairment rating for her back pain. TWCC then requested a "psychological evaluation and impairment rating for the psychological condition." The psychiatrist, Dr. Polatin, licensed in psychiatry, provided this examination to assist Dr. Robinson. Dr. Polatin was specifically asked to give an impairment rating for the psychiatric conditions that Larkins was exhibiting. Dr. Polatin's report provides no link to Larkins's head injury. He does not identify the nature of the head injury or how the head injury caused the psychiatric disorders in this case. Because Dr. Polatin does not mention the head injury suffered by Larkins, his opinion cannot rise to the level of expert testimony required to determine causation.

Because the medical records here do not provide sufficient expert evidence on causation, the trial court's finding that Larkins's depression, anxiety, and post-traumatic stress disorder were compensable was legally insufficient. We sustain issue one.

Because our resolution of SORM's legal insufficiency complaint is dispositive of this appeal, we do not address SORM's remaining issue. Tex.R.App. P. 47.1. However, in the interest of justice, we will remand the case for another trial. Tex.R.App. P. 43.3(b); *Wilson v. Texas Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex.1999).

## Conclusion

We reverse the trial court's judgment and remand the cause for a new trial.

Chief Justice GRAY concurs in the judgment but not the opinion of the Court. A separate opinion will not issue. He notes, however, that because the 70% impairment rating is not supported by legally sufficient evidence, that the only proper impairment rating the trial court could have found was either 5% or 0%, which is the impairment rating as certified by the other three doctors that examined Larkins (two doctors found 5% impairment, one doctor found 0% impairment). Because the evidence at the original trial, and now at the trial on remand, is limited to the evidence that was presented to the commission, new doctors

and different impairment ratings cannot be presented, nor can new or additional evidence of causation be presented. But because we do not know which of the alternative impairment ratings the trial court would have chosen at the first trial if he had known that consideration of the condition that resulted in the 70% impairment rating was not an option, we must remand the proceeding for a new trial so that the trial court may make that determination. *See generally, City of Waco v. Kelley*, 226 S.W.3d 672, 682–687 (Tex.App.–Waco 2007, pet. granted)(Gray, C.J., dissenting) (Upon determining that the hearing examiner imposed an improper punishment, an appellate court has no authority to determine what the proper punishment should be.). SORM prays that we remand with instructions that the trial court enter a judgment on remand of an impairment rating of either 5% or 0%. Precisely because these are the only options on remand, I believe the instruction is not necessary. Thus I agree that the judgment must be reversed and remanded, but I do not agree that it is being remanded under the authority of Rule 43.3(b). Tex.R.App. P. 43.3(b). If we ever properly use Rule 43.3(b) to remand a proceeding for a new trial in the interest of justice rather than reversing and rendering judgment, we should expressly state the unusual circumstances that justify the use of such a procedure. Because we have no choice but to remand in this circumstance, no detailed explanation of what constitutes the necessity for a new trial in the interest of justice is necessary.