The STATE OFFICE OF RISK MANAGEMENT, Appellant,

v.

Larry ADKINS, Appellee.

No. 05–10–00406–CV.

Court of Appeals of Texas, Dallas.

Aug. 9, 2011.

Kevin Desiderio Molina, Assistant Attorney General, Austin, TX, for Appellant.

Jacob Schwab Ginsberg, Ginsberg and Associates, Dallas, TX, Charles M. Carr, Houston, TX, for Appellee.

Before Justices O'NEILL, FRANCIS, and MYERS.

## OPINION

Opinion By Justice O'NEILL.

In this workers' compensation case, a jury determined appellee Larry Adkins suffered a compensable injury on August 11, 2006 and that he had a disability from August 11, 2006 to the present. Appellant, the State Office of Risk Management ("SORM"), argues the evidence is legally insufficient to support the jury's findings. We reverse and render.

## Background

In 2005, Adkins worked for North Sky Communications as a regional manager overseeing the installation of fiberoptic drops for Verizon Fios. On October 25, 2005, a car traveling approximately fifty-five miles per hour rear-ended Adkins, which resulted in a five-car accident.[1] The impact of the crash caused his head to hit the back glass of his truck and the front window over the steering wheel. He immediately felt sick to his stomach and pain in his neck. He did not require immediate medical attention at the scene; however, later in the evening, the pain increased.

The following day, Adkins saw Dr. James Tyler at K–Clinic. The results of an MRI performed on November 3, 2005 showed "3–mm posterior bulging of the annulus fibrosus" but no herniation at the C3–C4, C4–C5, C5–C6, and C6–C7 levels. Dr. Tyler referred Adkins to Dr. Pedro Nosnik. On November 29, 2005, Dr. Nosnik performed an EMG nerve conduction velocity test in the upper extremities and found evidence of clear acute and chronic, moderate advanced right carpal tunnel syndrome. He further stated "there is no evidence by this test of brachial plexopathy or cervical radiculopathy or thoracic outlet syndrome. There is no evidence of radial or ulnar entrapment syndrome or neuropathy." Dr. Nosnik diagnosed Adkins with a cervical sprain/strain resulting from a motor vehicle accident and traumatic bilateral carpal tunnel syndrome with the right side being worse than the left side. Old Republic Insurance Company, as the workers' compensation carrier for Adkins's employer, covered these medical expenses.

Between December 2005 and March 2006, Adkins did not see any doctors for his injuries and in fact, he said that although he had some on-again, off-again symptoms, the pain had resolved. On March 30, 2006, Adkins saw Dr. Karl Erwin, the designated doctor selected to evaluate him for purposes of workers' compensation. He determined Adkins had reached maximum medical improvement and reaffirmed the cervical strain and lumbar strain.

Adkins was then hired as a correctional officer for the Texas Department of Criminal Justice for the Coffield Unit, a maximum security prison. He participated in physical training and defensive training without any injuries or job restrictions. In July 2006, Adkins was involved in an altercation that required him and other officers to physically subdue an inmate. He described the incident as "a violent altercation." Despite the physical and violent nature of the incident, Adkins was not injured during the altercation.

On August 11, 2006, Adkins heard a commotion behind him while working in the recreational area of the prison. He

---

1. It is undisputed he was on the job at the     time of the accident.

quickly turned his head to the right. He felt a pop in his neck, felt immediate pain, and his right hand immediately swelled. He described the pain as "somewhat" similar to the pain from the car accident but "probably more." He immediately went to the prison infirmary, but he was informed it was only for prisoners. He then went to the emergency room. A CT scan of his neck found a "suspected right paracentral lateral herniation at C5–C6" but the report further noted "CT not adequate for evaluation of disc herniations ... MRI recommended."

Adkins later had an EMG test and Dr. Robert Sutherland reviewed it. He diagnosed Adkins as suffering from bilateral C5–6–7 chronic and active radiculopathy and bilateral entrapment across the elbow. Dr. Sutherland then referred Adkins to Dr. Kaliman J. Shwarts.

Adkins's October 10, 2006 medical records from Dr. Shwarts stated, "I believe that his cervical radiculopathy from his MVI on 10–24–05 is responsible for his current Sx." Dr. Shwarts further said "acute exacerbation of cervical radiculopathy ... not work-related." No where did Dr. Shwarts say Adkins sustained a new injury in 2006. In Adkins's December 13, 2006 record, Dr. Shwarts noted a herniated disc at C5–C6.

Adkins filed a workers' compensation claim with the Texas Workers' Compensa-

tion Commission ("TWCC"). A dispute arose as to whether the compensable injury on October 24, 2005 included herniated discs from C3/C4 through C6/C7 and whether he sustained a compensable injury on August 11, 2006 resulting in disability. A contested case hearing was held on December 10, 2007 in which the hearing officer determined Adkins's herniated discs did not naturally flow from the October 24, 2005 compensable injury, and he did not sustain damage or harm to the physical structure of his body in the course and scope of his employment on August 11, 2006. Adkins appealed the decision to the TWCC's Appeals Panel, which allowed the decision to stand.

After exhausting all his administrative remedies, Adkins filed his cause of action against SORM in district court. After a trial on the merits, a jury found Adkins sustained a compensable injury on August 11, 2006 resulting in disability.[2] SORM filed a motion to disregard the jury's answers, or alternatively, a motion for new trial, arguing the evidence was legally insufficient to support the verdict because Adkins failed to provide any medical expert testimony of a compensable injury. The trial court denied the motion, and this appeal followed.

### Standard of Review

Because Adkins originally appealed from the TWCC determination, he

---

**2.** The jury answered "yes" to the following question: "Do you find by the preponderance of the evidence that Larry Adkins sustained a compensable injury on August 11, 2006?" The jury charge defined "compensable injury" as follows:

> An injury that arises out of and in the course and scope of employment for which compensation is payable under the Texas Workers' Compensation Act. An aggravation of a previous condition or injury could rise to the level of a new injury, but for that to be compensable there must be a new

injury and not merely a transient increase in pain from an existing condition. What must be proven is not merely a recurrence of symptoms inherent in the etiology of the preexisting condition that has not been completely resolved, but that there has been some enhancement, acceleration, or worsening of the underlying condition from an injury. A compensable "aggravation" is not merely a recurrence of pain, it is a worsening, exacerbation, or acceleration of a preexisting condition by a work related injury.

bore the burden of proving at trial, by a preponderance of the evidence, that he received a compensable injury. *See* Tex. Lab.Code Ann. § 410.303 (West 2006) (party appealing decision has burden of proof); *Transcontinental Ins. Co. v. Crump,* 330 S.W.3d 211, 215 (Tex.2010). On appeal to this court, because SORM is attacking the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, SORM must demonstrate there is no evidence to support the adverse finding. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier,* 198 S.W.3d 408, 413–414 (Tex.App.-Dallas 2006, pet. denied). In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We sustain a no-evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *Meier,* 198 S.W.3d at 414. In making this determination, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 807.

### Applicable Law

The Texas Labor Code defines "injury" as "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm." Tex. Lab.Code Ann. § 401.011(26) (West Supp. 2010). "Compensable injury" is defined as "an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle." *Id.* § 401.011(10).

■ While the Texas Workers' Compensation Act does not specifically address aggravation of an injury, numerous courts have construed the term "injury" to include aggravation of a preexisting injury. *See Mendoza v. Old Republic Ins. Co.,* 333 S.W.3d 183, 187 (Tex.App.-El Paso 2010, pet. denied) (aggravation of preexisting condition is a compensable injury for purposes of the Act); *Cooper v. St. Paul Fire & Marine Ins. Co.,* 985 S.W.2d 614, 618 (Tex.App.-Amarillo 1999, pet. denied); *Peterson v. Continental Cas. Co.,* 997 S.W.2d 893, 895 (Tex.App.-Houston [1st Dist.] 1999, no pet.). To prove an aggravation of a preexisting condition there must be some enhancement, acceleration, or worsening of the underlying condition from the injury and not just a mere recurrence of symptoms inherent in the etiology of the preexisting condition. *See* Workers' Comp. Comm'n Appeal, No. 00–2967, 2001 WL 1602564, *2 (2001).

■ In *Guevara v. Ferrer,* the Texas Supreme Court reiterated the longstanding general rule that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer,* 247 S.W.3d 662, 665 (Tex.2007). However, the court acknowledged an exception to the general rule that under certain circumstances, causation findings linking events and physical conditions could be sufficiently supported by non-expert testimony. *Id.* at 666. Lay testimony may establish a sequence of events that provides a strong, logically traceable connection to support a causation finding between the accident and the physical condition when such conditions (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the

common knowledge and experience of laypersons. *Id.* at 667.

The court warned, however, that temporal proximity alone does not meet the standards of scientific reliability and does not, by itself, support an inference of medical causation. *Id.* at 667–68. Suspicion, possibility, speculation, or surmise has not been and is not legally sufficient to support a finding of legal causation. *Id.* at 668. When evidence is so weak as to do no more than create such a suspicion of the matter to be proved, the evidence is "no more than a scintilla and, in legal effect, is no evidence." *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004)).

Courts have used this analytical framework to determine whether expert testimony is required to prove an injury in workers' compensation cases. *See City of Laredo v. Garza*, 293 S.W.3d 625, 629–30 (Tex.App.-San Antonio 2009, no pet.) (holding more than lay testimony was required to prove on-the-job accident caused injury); *see also Wal–Mart Stores Tex., L.P. v. Crosby*, 295 S.W.3d 346, 352 (Tex.App.-Dallas 2009, pet. denied) (discussing both parties' reliance on *Guevara* for setting forth the standards for when expert testimony is necessary to prove causation).

## Discussion

We first address whether expert testimony was required under the facts of this case. SORM argues Adkins needed to provide expert testimony to establish aggravation of a preexisting condition, which he failed to do. Moreover, SORM contends Adkins left the jury to interpret medical records, which as laymen, they were not equipped to do. Adkins responds he provided expert medical testimony through the reports of an independent review officer and Dr. Shwarts. Alternatively, he asserts lay testimony was sufficient

to prove causation because of the temporal relationship between the injury and the onset of pain.

There is no question Adkins suffered from cervical disk bulges prior to August 11, 2006. An MRI showed 3mm posterior bulging of the annulus fibrosus but no formal herniation. However, Adkins testified at trial that after turning his neck quickly on August 11, 2006, he experienced pain in his neck and immediate swelling in his right hand. While the pain was "somewhat similar" to the pain from his car accident, it was "probably more." He also testified the pain in his right arm, the swelling of his right hand, the burning in his arm, and loss of use of his right hand were new symptoms following the August 11 incident. He believed he suffered a new injury. However, his medical records are to the contrary.

On August 14, 2006, Dr. Frederick Kersh evaluated Adkins. Dr. Kersh determined "simply turning the head to one side to look over the shoulder" would not qualify as an injury. He believed Adkins's "present acute symptoms are acute flare from the previous injury related to the MVA last year."

Dr. Shwarts's October 10, 2006 records state "I believe that his cervical radiculopathy from his MVI on 10–2[5]–05 is responsible for his current Sx." His report later states "acute exacerbation of cervical radiculopathy ... not work-related." Nowhere in this report did Dr. Shwarts say Adkins sustained a new injury in 2006. Dr. Shwarts believed Adkins was experiencing a flare-up of previous symptoms.

Dr. Sutherland evaluated Adkins on November 3, 2006. Adkins complained of neck pain, lower back pain, and left leg pain. Dr. Sutherland noted "[Adkins] states that all the above complaints resulted from this," referring to the motor vehi-

cle accident on October 25, 2005. Adkins admitted at trial he told Dr. Sutherland that all of his symptoms started with the car accident. Moreover, Adkins admitted the answers to his sworn interrogatories stated the herniated disks, right hand swelling, and paralysis stemmed from the October car accident.

■ Accordingly, Adkins's medical records indicate he suffered from a preexisting condition. Expert testimony is required to establish aggravation of a preexisting medical condition. *See Ins. Co. of N. Am. v. Myers,* 411 S.W.2d 710, 713 (Tex.1966) (noting whether a preexisting tumor was activated and the effects of malignancy accelerated is a question of science determinable only from medical expert testimony); *see generally LaRock v. Smith,* 310 S.W.3d 48, 58–59 (Tex.App.-El Paso 2010, no pet.) (holding there was no evidence of a reasonable medical probability of a connection between the acts and reherniation of discs). In *City of Laredo v. Garza,* the court determined whether *Guevara's* limited exception allowing the general experience and common sense of laypersons to evaluate injuries caused by an on-the-job accident involving a back injury was appropriate. 293 S.W.3d at 632. The court determined the case did not involve a simple back strain. Rather, similar to Adkins, Garza claimed he was suffering from disc herniations and radiculopathy. *Id.* Because the medical reports conflicted with regard to whether Garza suffered from disc bulges or disc herniations, the court concluded expert testimony was necessary because such knowledge was not a part of the general experience of laypersons. *Id.*

Here, Adkins's medical records show he first suffered from a back strain and disc bulges with no signs of disc herniation. However, he later suffered disc herniations and radiculopathy. Adkins provided no medical expert testimony discussing the differences in disc bulges and disc herniations. Nor did he provide any competent medical testimony establishing that his preexisting medical condition was enhanced, accelerated, or worsened by turning his head on August 11, 2006. Further, he provided no competent medical evidence that it was even possible to herniate a disc by turning his head quickly. In fact, Dr. Kersh stated the opposite in his medical report.

Essentially, Adkins merely provided his medical records and expected the jury to understand them. We cannot conclude that laypersons have the knowledge to understand the intricacies involved in diagnosing a back injury without some guidance from a medical expert. Accordingly, Adkins failed to provide more than a scintilla of evidence to support his claim of a compensable injury. Thus, the evidence is legally insufficient to support the jury's answer that Adkins suffered a compensable injury on August 11, 2006.

■ In reaching this conclusion, we reject Adkins's argument that he provided two sufficient expert reports establishing causation. First, he relies on the report provided by an independent review organization's board certified orthopedic surgeon.[3] In that report, the independent review doctor concluded "the patient had a work-related injury that worsened his condition" and indicated Adkins needed surgery. Adkins argues that by stating his

**3.** Independent Review, Inc. is a group certified by the Texas Department of Insurance as an independent review organization. The Texas Department of Insurance assigned Adkins's case to Independent Review, Inc. for an independent review in accordance with the Texas Insurance Code and Texas Labor Code.

condition "worsened," the independent review doctor tracked the definition of "compensable injury." Thus, the IRO report is sufficient to raise more than a scintilla of evidence that he suffered a compensable injury on August 11, 2006. We do not agree.

■ First, an IRO report is not a medical report on causation. Rather, it is a review to determine the reasonableness and necessity of medical treatment. Tex. Lab.Code Ann. § 413.031(d) (West Supp. 2010) ("A review of the medical necessity of a health care service requiring preauthorization ... shall be conducted by an independent review organization....."). Likewise, Adkins's statement in his brief that the independent review doctor "determined" he suffered a work-related injury that worsened his condition is misleading. The doctor made this statement under the section of the report titled "Injured Employee Clinical History (summary)." Despite phrasing it as a "determination," the doctor was actually providing a statutorily required summary and analysis of the medical records he reviewed. See id. § 413.032(a)(1)-(4) (noting an independent review decision must include, at a minimum, a list of all medical records reviewed, description of clinical basis used in making decision, an analysis and explanation of decision, and the qualifications of the doctor making the decision). The only determination made by the doctor was that he believed Adkins needed surgery.

■ Furthermore, the report does not establish whether the independent review doctor is qualified to opine on causation. Not every licensed doctor is automatically qualified to testify on every medical question. *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996); *Christian Care Ctrs., Inc. v. Golenko,* 328 S.W.3d 637, 644 (Tex.App.-Dallas 2010, pet. denied). The proffered expert must have "knowledge, skill, experi-

ence, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders,* 924 S.W.2d at 153–54; *see also* Tex.R. Evid. 702.

Under "Description of Qualifications of Reviewer," it states "M.D. Board Certified in Orthopedic Surgery." The doctor's name is not provided, which according to statute is confidential information. *See* Tex. Ins.Code Ann. § 4202.009 (West 2009) ("Information that reveals the identity of a physician or other individual health care provider who makes a review determination for an independent review organization is confidential."). Further, the report fails to state any educational background, experience, or training that could establish the doctor's qualifications to opine on the cause of Adkins's injury. *See, e.g., Schorp v. Baptist Mem. Health Sys.,* 5 S.W.3d 727, 732 (Tex.App.-San Antonio 1999, no pet.) (holding expert report insufficient when it failed to state the name and qualifications of the physician). Accordingly, the IRO report is legally insufficient to support the jury's finding that Adkins suffered a compensable injury on August 11, 2006.

■ We likewise conclude Dr. Shwarts's report is insufficient to support the verdict. If medical records are to be considered expert testimony, they must be evaluated applying the same principles used to evaluate the opinion of an expert. *State Office of Risk Mgmt. v. Larkins,* 258 S.W.3d 686, 693 (Tex.App.-Waco 2008, no pet.). The report is viewed in its entirety, and the expert must do more than use "magic words." *Id.* (citing *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706 (Tex.1997)). In the medical context, expert testimony that is not based on reasonable medical probability, but relies instead on possibility, speculation, or surmise, does

not assist the jury and cannot support a judgment. *Id.*

Adkins argues the report is sufficient because Dr. Shwarts stated Adkins suffered "an acute exacerbation of cervical radiculopathy." Therefore, by including "exacerbation," Dr. Shwarts used specific terminology within the definition of compensable injury. However, the use of "magic words" is not enough. *See id.* Adkins states in his brief that his underlying symptoms "were exacerbated by the incident in the jail on August 10, 2006 as stated in [Dr. Shwarts's] report." To the contrary, nowhere within Dr. Shwarts's report does he mention the August 11, 2006 incident. Rather, Dr. Shwarts stated "cervical radiculopathy from his AVI on 10–2[5]–05 is responsible for his current Sx."

We agree with SORM that in order to causally relate the August 11, 2006 incident to a compensable aggravation injury, Dr. Shwarts needed to, at a minimum, mention the incident. Without even a mention of the August 11, 2006 incident, we cannot conclude the statements by Dr. Shwarts are based on reasonable medical probability and established causation. *See, e.g., Larkins,* 258 S.W.3d at 693 (holding statements within a medical report failed to rise to the level of reasonable medical probability when doctor did not explain how a head injury could and did cause psychiatric disorders).

■ Lastly, Adkins argues in the alternative that he could rely on lay testimony to prove causation. We reject Adkins's argument that the temporal relationship between the August 11, 2006 incident and his immediate onset of pain constitutes evidence of causation that a lay person could easily understand and find *LaRock* instructive. *See LaRock v. Smith,* 310 S.W.3d 48, 58–59 (Tex.App.-El Paso 2010, no pet.); *see also Guevara,* 247 S.W.3d at 668 (discussing limited circumstances where layperson testimony is sufficient to establish causation).

In that case, plaintiff Smith originally hurt her back while entering her patrol car. The injury resulted in surgery. During follow up physical therapy, Gallardo, a clinic employee, re-injured Smith while performing a knee-to-chest stretching exercise. *Id.* at 52. An MRI revealed a recurrent herniated disc in the same location as her previous operation. *Id.* at 53. Smith eventually required two more back surgeries. *Id.* She sued the clinic and Gallardo. The issue raised on appeal was whether the evidence was sufficient to establish that Gallardo's alleged negligence proximately caused the reherniation. *Id.*

First, the court concluded the expert testimony presented did not establish causation with a reasonable medical probability. *Id.* at 58. The court then analyzed whether the limited exception of layperson testimony applied. It concluded "at most, Smith's testimony that she felt pain when Gallardo performed the knee-to-chest exercise merely raised suspicion that the event caused the herniation." *Id.* It further noted Smith was suffering from a preexisting condition, and the timing of the onset of pain did not mean the disc herniated at the moment Gallardo administered the knee-to-chest exercise. Rather, the only inference that could be drawn was that the disc contacted the nerve at that point in time, but the disc itself may have herniated before then. *Id.* at 59. Because the knee-to-chest exercise was only a possible cause of the reherniation, layperson testimony was insufficient to establish causation. *Id.*

Under the present facts, Adkins recovered from the car accident and was suffering no ill effects until the prison incident on August 11, 2006. Thus, similar to Smith's argument in *LaRock,* Adkins ar-

gues the jury could infer causation based on his pre-accident physical condition, the manner in which the incident occurred, the affected area of his body, and the quickness in relating the injury to the incident. He argues this uninterrupted, continuous chain of events provides a "strong, logically traceable connection between the event and the condition" to support causation. *See Guevara,* 247 S.W.3d at 668.

But as the court reasoned in *LaRock,* the only inference that can be drawn was that the turning of his head caused Adkins to feel pain at that moment. Whether that pain was the result of his disc herniating when he turned his head or whether the disc herniated before then, that was not an issue a layperson was equipped to decide based on his experience alone. Thus, the *Guevara* exception to medical expert testimony does not apply to these facts. Because Adkins failed to provide expert medical testimony supporting causation, we conclude the evidence is legally insufficient to support the jury's finding that he suffered a compensable injury. We sustain SORM's first issue.

In its second issue, SORM argues because Adkins did not sustain a compensable injury, he did not have a disability as defined by the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 401.011(16) (West Supp. 2010) (defining disability as "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage"). Thus, we should reverse the jury's finding of disability.[4] We agree. Having concluded the evidence is insufficient to support a finding that Adkins suffered a compensable injury from the August 11, 2006 incident, we likewise conclude he did not suf-

fer from a disability. We sustain SORM's second issue.

### Conclusion

Accordingly, we reverse the judgment of the trial court and render judgment that Adkins did not sustain a compensable injury on August 11, 2006 and that he did not have a disability as a result of that injury.

---

4. Jury question number five asked, "Do you find by a preponderance of the evidence that Larry Adkins sustained disability resulting from a compensable injury sustained on August 11, 2006, and, if so, for what period?" The jury answered "yes," from "August 11, 2006 to present."