

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00027-CV

BRADFORD TURNER AND PAT TURNER, Appellants

V.

JIM DUDLEY AND MARY DUDLEY, Appellees

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. 2017-244

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

A boundary dispute led to an unneighborly fight between Bradford Turner and Jim Dudley. Bradford and his wife, Pat Turner, sued Jim and his wife, Mary Dudley, for assault, trespass, and declaratory judgment that the Dudleys were "using more than the[ir] permitted easement," among other things. The Dudleys counterclaimed for damages caused to Jim's back and leg due to the assault. A Rusk County jury found that the location and use of easement granted to the Dudleys had not materially changed since they acquired the property and that Bradford had assaulted Jim. The jury awarded Jim $27,764.58 for medical bills and $5,000.00 for each of the following categories: (1) past physical pain, (2) future physical pain, (3) past mental anguish, (4) future mental anguish, (5) past physical impairment, and (6) future physical impairment. In accordance with the jury's verdict, the trial court's judgment awarded Jim $57,764.58 in damages from the assault. The judgment also found that the ownership of the easement had been previously litigated in the Dudleys' favor and enjoined the Turners from interfering with the Dudleys' use of the easement.

On appeal, the Turners argue that the trial court erred by awarding "an apparent prescriptive easement to the Dudleys" and by awarding Jim the full amount of damages from the assault because the evidence was legally insufficient to show that all of Jim's injuries were proximately caused by the assault.[1] Because the trial court's judgment did not award any easement to the Dudleys, we overrule the Turners' first point of error. However, we agree that

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

the Dudleys presented insufficient evidence that all of Jim's injuries were proximately caused by the assault. As a result, we reverse the trial court's award of damages and remand the case for a new trial.

## I.      The Judgment Does Not Award Any Easement to the Dudleys

It is undisputed that a judgment entered in 1946 in Rusk County found that a "road way [sic] being 24 feet in width . . . constitute[d] a private easement" belonging to the Dudleys' predecessors in interest. The 1946 judgment contained a rudimentary metes-and-bounds description of the easement, which used a landmark that had since disappeared. When the Dudleys purchased the property in 1979, the roadway and what the parties referred to as the "driveway extension" was already in place. The term "extension" was defined in the jury charge as "that portion of the easement in dispute." The jury found that there was no change in the easement road since 1946 and no change in the location of the driveway extension since 1979.

In 2005, the Turners purchased their property, subject to "[e]asements, rights-of-way, and prescriptive rights." In 2007, the Turners sent a letter demanding that the Dudleys stop using the driveway extension and sued the Dudleys over the disputed easement and the driveway extension, which the Dudleys argued was part of the easement awarded in the 1946 judgment. In 2008, a Rusk County court entered an agreed judgment between the Turners and Dudleys that recited that the parties had resolved all disputes, clarified the rights associated with the easement created by the 1946 judgment, and restricted the Turners from interfering with the Dudleys' use of the easement. The trial court found that the 1946 and 2008 judgments "foreclosed the door on

3

all the disputes . . . as of that time between these two neighbors in regard to their boundary lines or as to the driveway, the easement or what the easement amounted to."

The trial court's judgment at issue here recites that it ordered a modern survey be prepared as to the "actual placement of the roadway in question" and attached the survey as Exhibit "A" to the judgment. The judgment found that "the easement previous [sic] found to exist by the Court in the two prior cases, is hereby forthwith defined to be the roadway shown in Exhibit "A" and that JIM & MARY DUDLEY may use[] the portions shown therein in compliance with the previously adjudicated easement usage."

Even though the trial court's judgment did not grant any easement to the Dudleys, the Turners argue that the trial court "entered a judgment awarding the Dudleys a new 24-foot wide easement over Turners' land where they had built an extension of their driveway." They contend that the trial court erred in "awarding what can only be termed an easement by prescription to the Dudleys" because the Turners were not excluded from the use of the easement. This argument is not supported by the record. The twenty-four-foot easement was granted in the 1946 judgment and "two prior cases" as recited by the trial court's judgment in this case, and the Turners have not argued or shown that the judgment enlarged the easement referenced in the 1946 judgment or 2008 agreed judgment. Because the record does not support the Turners' first point of error, we overrule it.

4

**II.    A Portion of the Medical Damage Award Is Not Supported by Sufficient Evidence**

Next, the Turners argue that the Dudleys did not offer legally sufficient evidence that the assault was a proximate cause of a portion of Jim's medical treatment.  We agree.

**A.    Standard of Review and Applicable Law**

"Establishing causation in a personal injury case requires a plaintiff to prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries."  *FTS Int'l Servs., LLC v. Patterson*, No. 12-19-00040-CV, 2020 WL 5047913, at \*9 (Tex. App.—Tyler Aug. 26, 2020, no pet. h.) (mem. op.) (citing *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015)).  In determining legal sufficiency, the appellate court determines "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  In looking at the evidence, we credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not.  *Id.*  The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established by the evidence.  *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010).  "More than a scintilla of evidence exists when the evidence" reaches a level "enabl[ing] reasonable and fair-minded people to differ in their conclusions."  *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).  "Less than a scintilla of evidence exists when the evidence is 'so

weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

"[E]xpert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons." *Guevara v. Ferrer*, 247 S.W.3d 662, 663 (Tex. 2007). "Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions." *Id.* at 668. "But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Id.*

"Nevertheless, when combined with other causation evidence, evidence that conditions exhibited themselves or were diagnosed shortly after an event may be probative in determining causation." *Id.* Causation through lay testimony can be shown by "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition[s]" if the physical conditions "(1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the [occurrence], and (4) are[,] within the common knowledge and experience of laypersons, caused by [the occurrence]." *Id.* at 667. In this circumstance, "non-expert evidence alone is sufficient" because "both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were

6

probably caused by the occurrence." *Id.* at 668–69 (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

Medical "bills are not evidence of what all the conditions were nor that all the conditions were caused by the [incident]." *Id.* at 669. "Absent expert proof of the conditions and their causes, judgment for the expense of treatment is not supported by legally sufficient evidence." *Id.* Medical records can provide a causal link. *See id.* Even so, "[i]f medical records are to be considered expert testimony, they must be evaluated applying the same principles used to evaluate the opinion of an expert." *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 850 (Tex. App.—Dallas 2013, no pet.) (quoting *State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 402–03 (Tex. App.—Dallas 2011, no pet.)). "The report is viewed in its entirety, and the expert must do more than use 'magic words.'" *State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 402 (Tex. App.—Dallas 2011, no pet.) (quoting *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 693 (Tex. App.—Waco 2008, no pet.)). "In the medical context, expert testimony that is not based on reasonable medical probability, but relies instead on possibility, speculation, or surmise, does not assist the jury and cannot support a judgment." *Id.* at 402–03. Also, "[i]f evidence presents other plausible causes of the injury or condition that could be negated, the proponent of the testimony must offer evidence excluding those causes with reasonable certainty." *FTS Int'l Servs., LLC*, 2020 WL 5047913, at *9 (citing *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010)).

**B.	The Evidence**

"In personal injury cases, trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence, and the course of the injured person's physical condition and progress after the occurrence." *Guevara*, 247 S.W.3d at 666–67.

It is undisputed that Jim had two prior back surgeries before the fight with Bradford on August 24, 2017. At the time of the fight, Jim was seventy-two. Jim testified that he had done a lot of manual labor during his life and began experiencing back problems before x-rays in 2014 revealed that he had degenerative arthritis in his lumbar spine. Jim had a lumbar spinal fusion in 2014 and another spinal fusion in the same area in 2017 because the 2014 surgery was unsuccessful. Jim admitted that he underwent physical therapy and had pain injections to improve his condition before his June 2017 surgery. Jim testified that he listened to his doctor's advice to take it easy, was no longer on pain medication, and was eighty-five percent back to normal before the fight, even though he was wearing a back brace on occasion.

Photographs of Jim's bruises and bloody injuries from the fight were admitted before the jury. Jim went to the emergency room on the day after the fight and complained of back pain and numbness to his knee and foot, among other things, which Jim testified was a new symptom. He visited his surgeon, Marcella Madera, M.D., on October 2. Madera's progress note stated, "8/24 altercation . . . right away leg pain started up again over few days . . . pain 1–7 range . . . June 8 surgery; 2.5 months feeling better before altercation." Madera noted Jim's past surgeries and listed lumbar spondylosis, lumbar stenosis, and lumbar radiculopathy as a part of Jim's past

8

medical history. According to this progress note, she chose to treat Jim conservatively because his "x-rays show[ed] no sign of change in hardware position" from his surgeries.

On November 29, 2017, Madera noted that Jim "was having an excellent postoperative course with resolution of his preoperative symptoms at 2-1/2 months after surgery" but experienced "severe worsening of his symptoms immediately after" the assault. Madera was "very concerned that the altercation cause[d] a worsening of his situation." Madera's January 22, 2018, progress note stated, "We discussed that . . . it is my clinical suspicion that the altercation adversely affected his fusion in some way so as to irritate his L5 nerve root and I feel that in light of his severe pain we should consider exploring the region." Madera located "a small bone fragment . . . near the foramen" and wrote, "It is my opininon [sic] that that altercation dislodged a piece of tissue or bone that is now compressing his L5 root, or that the altercation due to traumatic force injured his L5 nerve. Suregry [sic] to explore area is planned."

Madera echoed her concerns in a surgical operation note that stated,

Mr. Dudley underwent L5-S1 fusion several months prior to presentation. Initially, he did excellently and then he got into an altercation. Immediately after the altercation, he began having severe incapacitating leg pain and now that pain persisted. We discussed risks and benefits of exploration of his fusion as well as the nerve root to see if there was any overt injury or scar or dislodged bone products.

According to the note, Madera found that scar tissue was compressing the L5 root. Jim admitted that Madera did not find any dislodged bone fragment and that he felt better after the scar tissue from his prior surgery was removed. Madera's February 12, 2018, progress note found that Jim was doing well after surgery. She wrote, "It is still my opinion that the trauma from the

9

altercation . . . injured his L5 root and now after decompression and after surgery he is feeling better although he does still have some persistent numbness symptoms."

### C. Analysis

"Non-expert evidence of circumstances surrounding [an incident] and [the plaintiff's] complaints [are] sufficient to allow a layperson of common knowledge and experience to determine that [the plaintiff's] immediate post-accident condition which resulted in his being transported to an emergency room and examined in the emergency room were causally related to the accident." *Id.* at 669; *see Tex. Dep't of Transp. v. Banda*, No. 03-09-00724-CV, 2010 WL 5463857, at *5 (Tex. App.—Austin Dec. 22, 2010, pet. denied) (mem. op.). As a result, the Turners do not dispute that "there are some facts in temporal proximity to the assault which would support a cause in fact element of proof for [Jim's] ER visit and some small increase in his back pain for a limited period of time." Instead, they argue that the evidence is legally insufficient to support a finding of proximate cause for medical treatment he received "weeks and months later."

Where a plaintiff suffers from a prior injury, undergoes surgery to remedy the prior injury before the incident, and then alleges that an incident caused an injury that is similar to the prior injury the plaintiff is "required to present expert testimony linking [the] latest . . . injury and . . . surgery to" the incident. *Rollins v. Tex. Coll.*, 515 S.W.3d 364, 370 (Tex. App.—Tyler 2016, pet. denied) (citing *Adkins*, 347 S.W.3d at 400–01 (expert testimony required to establish aggravation of preexisting medical condition)). On November 13, 2017, Madera was "very concerned that the altercation cause[d] a worsening of his situation" and formed a "clinical

10

suspicion" on January 22, 2018, that the "altercation adversely affected his fusion in some way." Because this evidence created no more than a mere surmise or suspicion, it was legally insufficient to establish causation.

While Madera's last progress note stated her opinion that trauma from the altercation injured Jim's L5 root, it did not assist the jury in determining the ultimate question of whether the fight was "shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *FTS Int'l Servs.*, 2020 WL 5047913, at *9.[2] Madera did not explain her reasoning for her opinion or whether it was based on reasonable medical probability. In the context of the prior progress notes, the opinion appeared to rely on "possibility, speculation, or surmise," which did not assist the jury. *See Adkins*, 347 S.W.3d at 402. Most important, the last progress note fell short of establishing that Jim's back and leg pain were proximately caused by the trauma because it showed that Jim's pain was alleviated when scar tissue from prior surgeries was removed. Thus, Madera's notes did not negate that Jim's prior medical conditions or the scar tissue itself were a plausible cause of Jim's injuries. *See FTS Int'l Servs., LLC*, 2020 WL 5047913, at *9.

As a result, we conclude that a lay jury could not reasonably find a causal connection between all of Jim's medical problems and the incident without the aid of medical-expert testimony. *See Hooper*, 401 S.W.3d at 850 (neck pain and stiffness before an accident and later diagnoses of arthritis prevented medical bills from serving as a causal link between the accident

---

[2]"[A]n expert's mere recitation that he has examined a patient and done a history of the patient and has concluded that X caused the patient to suffer Y would not be sufficient to prove specific causation." *Builder Servs. Grp., Inc. v. Taylor*, No. 03-18-00710-CV, 2020 WL 5608484, at *6 (Tex. App.—Austin Sept. 17, 2020, no pet.) (mem. op.) (quoting *Minnesota Mining & Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 199 (Tex. App.—Texarkana 1998, pet. denied)).

and neck pain without expert testimony); *see also Guevara*, 247 S.W.3d at 669–70. Because the evidence is legally insufficient to support a finding that the fight proximately caused all of Jim's medical conditions, we reverse the award of assault damages to Jim. *See Guevara*, 247 S.W.3d at 670.

The Turners pray for this Court to reverse the damage award and remand the matter to the trial court for a proper determination of the damage amount. While we "[g]enerally . . . render judgment when a no evidence issue is sustained following a trial on the merits[,] . . . when there is evidence to support some damages it is not appropriate to render judgment." *Id.* Where, as here, "a proper remittitur cannot be determined, then the case should be remanded to the trial court for a new trial." *Id.*

### III. Conclusion

We reverse the trial court's award of damages to Jim and remand the matter for a new trial. In all other respects, the trial court's judgment is affirmed.

Scott E. Stevens
Justice

Date Submitted:     October 9, 2020
Date Decided:       October 16, 2020

12